May Term, 1837.

GRIMES
v.
WILSON.

---

4b 331
153 352

GRIMES and Another *v.* WILSON and Wife.

The term *messuage,* as used in the statute regulating dower, may include a few acres of land adjacent to a dwelling-house, but not a whole farm.

If a widow enter upon the lands of her deceased husband, other than "the mansion-house and messuage thereunto belonging," and appropriate the pro-

May Term,
1837.

GRIMES
v.
WILSON.

ceeds to her own use,—she is a wrong-doer, and amenable to the proprietor of the land for the rents and profits.

To entitle a party to the aid of a Court of chancery to compel an account of rents and profits, he must connect with his cause of complaint some peculiar equitable ground for the interference of the Court, such as fraud, &c.

An infant has a right to consider any person as his guardian, bailiff, or trustee, who enters upon his land and receives the proceeds, and may compel him to account for the same in a Court of chancery.

Two persons joined in a bill in chancery, each having a separate claim against the defendant. One of the complainants, on account of his infancy, had a right to sue in chancery, but the other had no such right. *Held*, on demurrer, that the bill was insufficient. *Held*, also, that on sustaining the demurrer in such case, the bill should not be dismissed as to the infant, but should stand over in order that he might strike the name of the other complainant from the bill.

*Thursday,*
*September* 7.

APPEAL from the *Shelby* Circuit Court.

DEWEY, J.—*Wilson Grimes,* an infant, by his next friend and guardian, and *Charles Grimes,* filed a bill in chancery against *Allen Wilson* and *Henrietta* his wife.

The bill states that *Noble Grimes,* the father of the complainants, died intestate, seised and possessed of "all that messuage or mansion-house, land, tenements, and hereditaments, known" as two certain half-quarter sections of land, (describing them,) leaving the complainants and seven other children, (naming them,) his next of kin and heirs at law, to whom the premises descended, subject to the right of dower of his widow *Henrietta Grimes;* that after the death of *Noble Grimes,* two of his heirs deceased, leaving the complainants and his other surviving children their next of kin and heirs at law, to whom descended their respective estates in the premises described in the bill; that on those premises there were, at the time of the death of *Noble Grimes,* 40 acres of cleared land fit for cultivation; that the widow of *Noble Grimes,* one of the defendants, upon the decease of her husband, entered upon the premises, cultivated the cleared ground, and received the rents and profits thereof to her own use until her intermarriage with *Wilson,* the other defendant; that since that event, to the filing of the bill, *Wilson* had been in the receipt of the rents and profits; that in addition to the proceeds of the cleared land, the defendants had received profit from wood-land, a sugar-camp, and an orchard on the premises; that the complainants were each entitled to a share of the rents and profits so received by the defendants; and that they had demanded an account and payment of the

same, which had been refused. The prayer of the bill is for an account of the rents and profits, and payment to the complainants of their respective shares, which are alleged in the bill to amount to upwards of 130 dollars each.

General demurrer to the bill for want of equity; demurrer sustained, and bill dismissed.

In support of the demurrer, it is contended that the bill does not present a case showing a right in either of the complainants to hold the defendants responsible in any manner; but that if such right does exist, the remedy is at law and not in equity.

The first position is based upon the construction given by the defendants to our statute regulating dower.

That act, after providing that the widow of an intestate shall be endowed of one full and equal third part of the real estate, whereof her husband was seised during coverture, provides "that until such dower shall be assigned, it shall be lawful for her to remain and continue in the mansion-house and messuage thereunto belonging, without being chargeable to pay the heir any rent for the same" (1). The defendants conceive, that the terms mansion-house and *messuage thereunto belonging*, embrace not only the dwelling-house and a small parcel of land connected with it, but that they include the whole farm or plantation in possession of the husband at the time of his death; and that, therefore, as the bill does not allege the assignment of dower to the widow of *Noble Grimes*, she and her present husband, *Wilson*, are not accountable to the complainants as heirs at law, either in law or equity, for the use and occupation of any part of the premises described in the bill.

We cannot concur in giving to the phrase in question a meaning so extensive. It is difficult to define with precision the signification of the legal term *messuage*. Authors have differed in their understanding of its import. The best writers, however, represent it as synonymous with house, and as embracing within its meaning an orchard, garden, curtilage, adjoining buildings, and other appendages of a dwelling-house; but they limit the ground which may be appropriated to these purposes to a small quantity, not exceeding an "acre or more." 1 Thom. Coke, 215, 216, and notes.—1 Shep. Touch. 94.—2 Saund. 401, n. 2. Our statute, by using the words mansion-house *and messuage*, cannot be supposed to have designed to

give to the latter term a meaning entirely new and inconsistent with its usual sense; and though the act may have somewhat enlarged its import so as to include a few acres of land, (greater or less in extent according to circumstances,) adjacent to a dwelling-house, and appropriated peculiarly to its use, it cannot be construed so as to make that term embrace a whole farm or plantation. The bill would have been better drawn, had it stated what part of the real property described in it is a messuage, and what, other land. Enough, however, is alleged to show, that the defendants entered upon a greater portion of the land than was warranted by the statute.

This statute leaves the right of dower of the widow of an intestate, as it stood at common law, excepting that it is extended to equitable as well as legal titles, and that the privilege of remaining in the possession of the mansion-house and messuage thereunto belonging, rent free, until assignment of dower, is substituted in the place of her right to occupy the chief mansion of her husband 40 days after his decease—which is called her quarantine (2). By the common law, "the widow cannot enter for her dower until it be assigned her, nor can she alien it so as to enable the grantee to sue for it in his own name. She has no estate in the lands until assignment; and after the expiration of her quarantine, the heir may put her out of possession, and drive her to her suit for her dower. She has no right to tarry in her husband's house beyond the 40 days; and it is not until her dower has been duly assigned, that the widow acquires a vested estate for life, which will enable her to sustain her ejectment." She is not, in consequence of her right of dower, a tenant in common with the heir at law or devisee. 4 Kent's Comm. 61, 62.—1 Thom. Coke, 584.—*Doe* v. *Nutt,* 2 Carr. & Payne, 430.—*Chapman* v. *Armistead,* 4 Munf. 382.—*Jackson* v. *O'Donaghy,* 7 Johns. R. 247.—*Sheafe* v. *O'Neil,* 9 Mass. Rep. 13.—*Moore* v. *Gilliam,* 5 Munf. 346. The necessary consequence of this view of the subject is, that if a widow enter upon the lands of her deceased husband, other than the "mansion-house and messuage thereunto belonging," and appropriate the proceeds thereof to her own use, she is a wrong-doer, and answerable to the proprietor of the lands for the rents and profits.

The next inquiry is, whether the remedy for such an injury is at law or in equity?

In order to entitle a party to the aid of a Court of chancery to compel an account for rents and profits, it is necessary that he should show something more than a mere right to them, and that they have been withheld from him. He must connect with his cause of complaint " some peculiar equitable ground for interference, such as fraud, or accident, or mistake, the want of a discovery, some impediment at law, the existence of a constructive trust, or the necessity of interposing to prevent a multiplicity of suits." 1 Story's Eq. 487.—1 Madd. Ch. 74.—1 Fonb. Eq. b. 1, ch. 3, sec. 3.—*Dormer* v. *Fortescue*, 2 Atk. 282; 3 Atk. 124 to 134. The bill of complaint in the record presents none of these features. It merely states that the widow, and her husband, *Wilson*, entered upon the lands which descended to the complainants, and for a number of years enjoyed, exclusively, the rents and profits thereof. So far, no equitable jurisdiction is shown over the cause of either of the plaintiffs.

There is, however, one feature in the bill which entitles one of the complainants, *Wilson Grimes*, to a hearing in chancery; and that is his infancy. An infant has a right to consider any person who may enter upon his land, and receive the proceeds thereof, as his guardian, bailiff, or trustee, and compel him to account for them in a Court of equity. 1 Story's Eq. 487.—1 Madd. Ch. 74.—1 Atk. 544.—*Newburgh* v. *Bickerstaffe*, 1 Vern. 295.—*Cary* v. *Bertie*, 2 id. 342.—*Hutton* v. *Simpson*, 2 id. 722.—3 Atk. 129, 130.

It remains to inquire, what is the consequence of conjoining in a bill one plaintiff who is entitled to sue in a Court of equity, with another who has no such right? Independently of the objection to such a practice, arising from the great inconvenience which would attend it, this point rests on authority. In the cases of the *King of Spain and others* v. *Machado and others*, 4 Russ. Rep. 225, and *Cuff* v. *Platell*, Ibid. 242, it was held that the conjunction of a plaintiff having an interest in the subject of the suit, with another without such interest, was fatal on general demurrer for want of equity. The same principle was recognised in *Makepeace* v. *Haythorne*, 4 Russ. Rep. 244, in which the objection to the misjoinder was taken by plea. It is true that in the case at bar, both the complainants show an interest in the rents and profits received by the defendants, but their rights are perfectly distinct; they have no connection

with each other.    The one, in consequence of the privilege of infancy alone, has a right to seek redress in equity; the other, without such privilege, exhibits a distinct cause of action of pure common law cognisance, and shows no impediment to his remedy at law.

There is no privity between these plaintiffs.    Were they connected in interest,—one holding the legal, and the other the equitable interest, as is the case with assignor and assignee, principal and agent, and in other cases of like character, they might join.    In such instances, but one claim is sought to be enforced by parties claiming one under the other.    Here two independent demands, the one a proper subject of equitable, the other of legal jurisdiction, are attempted to be coerced conjointly.    We think the principle governing the decision of the cases, in which one plaintiff had an interest in the subject-matter of the controversy and the other had none, is applicable to this case; and that, therefore, the demurrer was well allowed by the Circuit Court.

But in consideration of the infancy of *Wilson Grimes*, the bill should not have been dismissed as to him.    The cause should have been ordered to stand over, that he might strike the name of *Charles Grimes* from the bill, and proceed alone.

*Per Curiam.*—The decree is reversed.    Cause remanded, &c.

*P. Sweetser* and *S. Major*, for the appellants.

*C. Fletcher*, *O. Butler*, and *H. Brown*, for the appellees.

(1) Rev. Code, 1831, p. 209.   Accord. Rev. Stat. 1838, p. 239.

(2) The widow has now a right of dower in the *equitable* estate to which her husband was entitled *at the time of his death;* and the husband is, for this purpose, considered equitably entitled *to any real property for which he had contracted*, in proportion to the purchase-money which he had actually paid. Rev. Stat. 1838, p. 238, 239.