DE LOUIS *et al. v.* MEEK *et al.*

A bill to vacate a judgment of partition for fraud may be in the nature of a bill of review, and may be demurred to for want of equity.

No motion having been made to amend, a bill may be dismissed, and a decree rendered upon the demurrer.

Upon a general and spec'al demurrer it is not necessary to make good all the causes of demurrer assigned. If sustained for one out of several causes affecting the whole bill, it is sufficient.

A demurrer puts in issue the entire equity of the bill and if sustained as to some, it should be as to all the defendants.

The objection of a mis-joinder of complainants cannot be made for the first time at the hearing, but should be assigned among the causes of demurrer.

An allegation of fraud in a bill to set aside a partition, is sufficiently specific where it charges that the attorney for plaintiffs in the partition suit entered the appearance of complainant, without his knowledge, consent or authority, and thereupon admitted a large amount of spurious, fraudulent and unjust claims to others, which proportionably diminished his share in the property.

Where a bill charges actual fraud on the ground of deception, artifice and circumvention, in terms judicially intelligible, it is suff'c'en'.

Where a judgment in partition is alleged to have been obtained by fraud it may be impeached by an original bill without leave of the court.

If the attorney of a party, by fraudulent representations procure his opponents defeat in court, or if an attorney appear and act for a party without his knowledge, or authority, the party injured may be relieved in a court of equity on the ground of fraud.

The provisions of the partition act can only apply to proceedings within its legitimate power, and not to proceedings *mala fide.*

Fraud vitiates the most important judicial acts.

If in a compromise partition, the petitioners or their attorneys, act fraudulently by misrepresentation or concealment, the party injured is entitled to relief in equity.

A general allegation of fraud in a bill is sufficient, if so certainly and distinctly stated as to make the subject matter of it clear.

*Appeal from Lee District Court.*

*Opinion by* WILLIAMS, C. J.    Elizabeth De Louis, formerly Elizabeth Hunt, John Wright and Henry De Louis, husband of the said Elizabeth, on the 20th day of August, 1845, filed their bill of complaint against William Meek, *et al.* in the district court of Lee county, setting forth that by treaty between the United States of America and the

Greene.
2g   55
79   635

2g   55
142   394

Sac and Fox nation of Indians, dated August 4, 1824, a certain tract of land lying and being within said county of Lee, and commonly known as the "Half Breed Tract," and lying between the rivers Des Moines and the Mississippi, and bounded on the north by a line running due east from the north west corner of the state of Missouri to the Mississippi river, as in said treaty set forth, was reserved for the use of the half breeds belonging to the Sac and Fox nation, to be held by them as other Indian titles were held; that on the 30th of June, 1834, by an act of Congress, the reversionary interest of the United States was relinquished, and vested in such half breeds as were, by the Indian title, entitled to the same, under the reservation in said treaty; that the tract of land contains about one hundred and nineteen thousand acres, more or less; that Elizabeth De Louis is one of said half breeds mentioned in the treaty, and in said act of Congress, to whom said reservation and relinquishment was made; that by virtue thereof, she became the legal owner of one full undivided and equal share of said tract of land, in fee, in common with the other half breeds designated and intended as the recipients of the said reservation and relinquishment of the land aforesaid; that she was married to Henry De Louis; that she, or her said husband had never sold, or in any manner parted with her or their interest in said land; but had since said treaty resided on the land, and had never in any manner abandoned the same or her interest therein; that she and her husband, at the time of the filing of the bill, were entitled to one equal share of the land; and that they then resided on, and occupied a part of the land, as their home, and had made improvements thereon.

The bill then sets forth that John Wright claims, and is, the owner in fee of one-fourth of a full share in the said land, so held by reserve and relinquishment as aforesaid, by purchase from one Isaac R. Campbell, and Wilson Overall, who had purchased the same from Francoise Hebert, a half breed of the Sac and Fox nation, who was

De Louis *v.* Meek.

entitled thereto by virtue of the treaty and act of Congress aforesaid; that she, the said Francoise, had intermarried with one Charles Menar; that at the time of the relinquishment she had not abandoned her claim, and had her home on the land; that she and her said husband had conveyed their share in the land to the said Campbell and Overall, from whom said Wright had purchased the same for a valuable consideration. For all which reference is made to the title deeds ready to be produced in court.

The claim and title of Wright by proper deeds of conveyance from Hebert and wife to him, for one-fourth of a share in the land in common with the other owners, is set forth, with the averment that he had his home and resided on the land at the time of making his complaint, and for a long time before it; and that he was an occupant thereof, and had made valuable improvements on said half breed tract. The complainants then proceed to state in their bill that on or about the 14th day of April, 1840, Josiah Spalding and others therein named, filed, in the district court of Lee county, their petition for a partition of said half breed tract of land among themselves and certain other persons pretending and claiming to be the persons entitled thereto, under the treaty, reservation and relinquishment aforesaid, or legally claiming under those who were originally so entitled; that very many of the persons so petitioning had no good and legal right or equitable title to any part of said tract of land. The bill admits that the claims or titles of thirty-three persons besides those of De Louis and Wright, the complainants, are correct and just, and avers that all the rest and residue of the claims which were adjudicated and allowed in the said decree of the district court, made upon the said petition for the partition of the said land, were illegal and fraudulent, being obtained in the names of persons who had no real existence, or by persons who had fraudulently represented themselves to be half breeds, when in truth they were not; and that the petitioners well knew that the said claims were unjust and could not be substantiated by legal proof.

7

The bill also charges, on behalf of Wright, that Reid & Johnston, Solicitors of the District Court of Lee county, entered his appearance for him, said Wright, in the suit for partition in which the decree was entered, and assumed to act for him without any legal authority so to do, and without his knowledge; and consented to the decree on the part of your orator without legal authority so to do; that they, said Reid & Johnston, were at the same time acting as solicitors for Marsh, Lee & Delavan, and others in the same proceeding; that they entered into said consent so as to procure a large portion of said spurious claims to be allowed in favor of said Marsh, Lee & Delavan, and others, so as to swell, greatly, their interests, and thereby proportionably to diminish that of said Wright; that all such claims to said land, so admitted and allowed, except the thirty-three shares and one-fourth of a share named in petitioners' bill of complaint, were fraudulent and unjust, never could have been substantiated by legal proof, and would never have been admitted into the decree, except by the consent or compromise so made. It then avers that the actings and doings aforesaid are contrary to equity and good conscience, and that the petitioners were thereby greatly injured and defrauded.

It is also charged in the bill, that the consent or compromise upon which the decree was entered, was made by the parties thereto and the conductors thereof in fraudulent confederation and collusion with each other, they having combined to cheat and defraud petitioners in the premises, and that the complainants did not participate therein; that the same was intended to, and did, injure the rights and possessions of the petitioners, and injuriously affect and endanger them in the quiet enjoyment of their improvements and homes on the said half breed tract of land.

The bill further charges that the decree was produced and obtained by falsely and fraudulently inducing the court which made it to believe that all legal claimants, interested in the said tract of land, were duly and legally

represented in said court, and that their rights were equitably secured thereby; that they, or persons legally authorized to act for them in the premises, had mutually agreed and consented thereto, and had agreed on their respective interests in the land as therein adjusted, all of which was untrue in point of fact; that by such fraudulent collusion the court was deceived, and induced to order, adjudge and decree, and did order and decree that the claims and rights of the said half breed claimants amounted to one hundred and one in number, as equal portions or shares; and that the said one hundred and one shares should be divided amongst certain persons, parties to said decree who are made parties to this bill, as defendants, in the proportions specified in said decree, and that the rights, titles and claims, of all other persons should thereafter be barred and concluded as to the land; that these doings are against and in derogation of the rights of the petitioners, and contrary to equity and good conscience.

It is then stated in the bill that commissioners were appointed to make partition of the land into one hundred and one shares of equal value among the parties to the proceeding for the decree.   Reference is made to the proceedings in partition making them part of the bill.

John Wright also complains that he appeared at the place of holding of the said court at the term when the decree was made, and before the making of it, for the purpose of proving up his claim, and to obtain his just rights; and that he was informed by one of the counsel for the complainants in said petition for partition that the cause would not be tried at that term.   He avers that this was done before any agreement in the case was made, or any action had upon said petition for the perfecting or making of said final decree; that under this assurance from said counsel he left the court, and returned to his home, under the belief that no such trial would be had at that term; that the information so received from said counsel was untrue and fraudulent in point of fact, and that by means of which he, the said Wright, was fraudulently induced to

believe that his being longer present at that term of the court was unnecessary; that he was thereby induced to leave and go home, and therefore failed to be present and attend, as he otherwise would have done, to the procurement of his just and equitable rights, by reason of which said Wright alleges that he was greatly cheated and defrauded, and suffered damage.

The bill then sets forth the names of the persons who received by said decree beneficial interests, among whom are Marsh, Lee & Delavan, trustees of the New York Land company, and Isaac Galland, and others. The bill charges in conclusion, that the decree was obtained by collusion and fraud, generally, and that it ought to be vacated, set aside and made void, and that the land in said tract ought to be partitioned anew among the rightful owners thereof.

The prayer of the bill is for the proper legal process to compel the parties respondent to appear and answer; that they be made to discover by what right they claim to hold any interest or claim in the land; that they may be put on the proof of their claims before the same may be allowed; that all and singular the facts of the case, and rights of the respective parties and true claimants, be made to appear, that full justice and equity may be done in the premises, in order that a full and ample relief in the premises, both general and special, may be granted and decreed, as equity and good conscience, and the nature of the case shall require; and especially that the decree aforesaid be vacated and annulled, for the fraud aforesaid, and that a re-partition of said lands may be had among the rightful owners thereof, according to their respective shares and interests therein; and that full and complete justice may be done in the premises to all parties concerned, according to the rules and principles of a court of equity.

The foregoing is the substance of the bill of the complainants in this action. To this bill the respondents demurred generally and specially, on the ground that it did not show equity on its face. Several special causes of demurrer were assigned, as follows:

De Louis *v.* Meck.

1. The bill is defective in form and substance, and contains no equity entitling complainants to relief in chancery. "The bill charges fraud generally, but does not set out such facts as warrant the charge of fraud, either as to complainant Wright being deceived, or as to Reid and Johnston representing complainants and defendants. Nor, as to the compromise, that the parties knew bad claims were allowed, nor that the court was deceived and the decree obtained by fraud."

2. "The bill is defective and insufficient, as it does not specify any error apparent on the face of the decree or record, but only alleges imposition on the court, by which the court decreed erroneously with reference to the real justice of the case, but right according to the record, which is not allowable in a bill of review."

3. Said bill, although filed as a bill of review, contains matter, if otherwise sufficient, is only proper for a bill impeaching the decree for fraud, which is not allowed.

4. "The matter alleged in the bill charging fraud, and which is the only pretended equity in said bill, cannot be urged in such a bill (impeaching the decree for its fraudulent obtension) by complainants who were parties to the decree.

5. Said bill is defective, because it does not definitely show what is its character; whether a bill of review, or a bill impeaching the decree for fraud in its obtension.

6. Said bill does not sufficiently set out the errors, if any, in said decree, by showing the proceedings void, and the particular error in the decree, as required by the rules of chancery pleading.

The demurrer was sustained by the court below, and is now here on appeal. As the counsel concerned for the parties have taken the complaint in this case, as filed, to be a bill in chancery in the nature of a bill of review impeaching the decree in partition for fraud, and have so treated it upon the argument; and as this court is of the opinion that this is the proper character of the bill, it will

be so considered. This, then, being the character of the bill, we will proceed to examine the case, as presented on the demurrer of the respondents filed thereto.

The demurrer is general, and denies that the bill of the complainants contains any equity upon which to maintain their suit in a court of chancery for relief.

That the defendants had a right to demur to the bill for want of equity, we think cannot be with propriety questioned. It was their privilege in a proceeding, such as this, to resist in the outset of the trial, by putting in question the legal right of the complainants to obtain a decree in accordance with their prayer upon their own showing in the bill, and thus put to the test of law the case as stated. It is the peculiar province of a court of equity to entertain, investigate and decide, questions of conscience, affecting the rights of the citizen, upon the pure and full principles of justice. But, in this court, the party complaining and seeking redress must come to her altar with pure hands, in good faith, and prepared to show that he is chargeable with no fault or gross' negligence on his part. He must bring himself within the well defined limits of the judicial sphere, as prescribed by the rules of practice, in compliance with which, alone, justice can be properly invoked. He must show that he is injured in his rights by those of whom he complains; that he has a right to complain; that the wrong of which he complains, is not his own; and that he has not an adequate remedy in a court of law. Failing, thus, to assume the proper position, it is the legal privilege of the respondent to demur, and put his complaint to the test of law. The privilege of demurring to a bill such as this cannot be questioned. See Story's Eq. Pl. §§ 637, 639.

Objection to the action of the court below has been made by the counsel of the complainants, in entering judgment against them upon the demurrer. It is urged that they should have been allowed to amend. The demurrer being sustained on the ground that the bill contained no equity, and as no motion was made for leave to amend before judg-

De Louis *v.* Meek.

ment was entered, there is no error in this. Story's Eq. Pl. § 361; Rev. Stat. p. 108, §§ 16, 17.

It is also contended by the complainants, that the particular causes of demurrer should have been distinctly pointed out by the party demurring. This would be correct, if the demurrer were strictly special in its nature. The demurrer, with the causes assigned, attacked the bill in a two fold character, with a view to defeat it in either. It does not bear the badge of a mere bill of review, and therefore the special causes assigned to assail it in that shape need not be considered; but, taking it as a bill in the nature of a bill of review, impeaching the decree for fraud, its equity is directly denied by some of the causes assigned. The assignments go to the entire gravamen of the complaint, so as to defeat it entirely on matter of substance; therefore the fact that the respondents failed to make the other special causes of demurrer good did not deprive them of the benefit of those which were valid in the court below. Story's Eq. Pl. 350, § 443.

It is alleged, also, that a part of the defendants only have demurred, and that, as to the rest, the bill should not have been dismissed. We have just stated that the demurrer strikes at the bill as an entirety, putting in issue its whole substance, on the charge of fraud, against all the defendants. Upon this issue in law the right of action as to one and all of the parties was at stake. The bill seeks to set aside the decree in partition for fraud in obtaining it. If the decree be set aside as to one of the defendants, it will be so as to all. This rule in legal proceeding is in c.nsistency with the dictates of sound reason and justice. 1 Scam. 553, *Vanschaick* v. *Trotter*, 6 Cowen, 600. Sufficient, however, has been said on this point, as upon the argument it was not strenuously urged. Whilst considering the points touching the demurrer, and the bill as affected by it, together with the action of the court upon it, it may be proper here to dispose of a question raised by counsel for the defendants. It is urged by them that the bill shows a misjoinder of the complainants, and is

therefore bad. If this objection to the bill be well found-
ed, it should have appeared among the causes of demurrer
assigned, so that the case might, in accordance with the
rules of practice, have been disencumbered, by the dis-
missal of an improper party. On this point, see *Boyd* v.
*Hoyt*, 5 Paige 65; *Trustees of Watertown* v. *Cowan*, 4
Paige 510. In the case of *Grimes* v. *Wilson*, 4 Blackf.
335, this matter is discussed, and the true principle pre-
sented. There the parties stood in no privity with each
other; one was an infant, and had a good case in equity;
the other had a distinct cause of action clearly cognizable
at common law, showing no impediment to his remedy
there. There was no privity existing between them; their
interests were separate; their demands independent. In
such a case the bill would be dismissed in answer to the
proper pleading. In the case at bar, although in the pro-
ceedings in partition, as set forth in the bill, the condition
of the complainants, is shown to be, in some respects, dif-
ferent, their interest in the end sought, by impeaching the
judgment or decree of partition, is one and the same. The
rights claimed by all the complainants are conjoined by
the issue to be tried on the merits of the bill. The doc-
trine here asserted and adopted by this court, is found in
the case of *Ballantine* v. *Beall*, 3 Scam. 206, and Story's
Eq. Pl. 530 and note, 531, 532, 535; *Tarrick* v. *Smith*, 5
Paige 560; *Brinkerhoff* v. *Brown*, 6 John. Ch. 150. We
deem it unnecessary to refer to further authorities on this
point, as we think the principle and practice on it well es-
tablished. Where there is unity in interest, as to the ob-
ject to be attained by the bill, as in this case, the parties
seeking redress in chancery may join in the same com-
plaint and maintain their action together. In such a case,
it is within the province of a court of chancery to mete
out to each and all of the complainants their rights, on the
principle of sound equity.

The objections presented touching the demurrer being
disposed of, we will proceed to consider the bill under its
legal operation. We have already said that the entire

De Louis *v.* Meek.

equity of the bill is put in question by the demurrer. Have the complainants presented such a case by their bill, as will justify a court of chancery in granting the relief sought?

The complainants, De Louis and wife, show, on their part that they are the owners in fee of one full share of the tract of land known as the half breed tract, situated in Lee county, Iowa, to which Elizabeth, the wife of said De Louis, became entitled, as one of the original half breed proprietors thereof, by treaty between the United States and the Sac and Fox Indians, made August 4, 1824, and by the act of Congress of June 30th, 1834; that the tract contains about one hundred and nineteen thousand acres of land, more or less; that she held the same in common with others claiming by the same title; that the said De Louis and wife are legally entitled to the same, &c. John Wright claims by title derived from the same source, by regular conveyance, and shows that he as owner is entitled to one fourth of a full share of the said tract; that he lives on the land, has made valuable improvements, &c. By this showing the complainants put themselves in the condition of persons claiming and having rights of valuable consideration, involved with those of others in such proceeding at law, as may have been resorted to for the adjustment of the interests of the several owners of the land in question.

They then complain that by the agreement and consent of Marsh, Lee & Delavan, and others, and their counsel participant therein, they have been injured in and deprived of their just rights; and therefore seek relief, by praying that the judgment in partition, of said land, entered by the district court of Lee county, on the 6th of May, 1842, may be set aside for fraud.

We will proceed to examine the points made as to the merits of the bill on the ground of fraud. . Although the bill has been dismissed as to De Louis and wife on their own motion, having been parties, we must consider it as it was in the court below. In the first place it is contended

8

that the charge of fraud, as laid in the bill, is insufficient in law—that the charge is general, and does not allege the fraud in proper specifications as to the particular facts in which it consists. Judge Story, in his Equity Jurisprudence, vol. 1, p. 196, § 186, says: "It is not easy to give a definition of fraud in the extensive signification in which that term is used, in courts of equity, and it has been said that these courts, very wisely, never laid down as a general proposition what shall constitute fraud, or any general rule beyond which they will not go, upon the ground of fraud, lest other means of avoiding the equity of the courts should be found out. That fraud is more odious than force." He then proceeds, on page 197, in the next section, to give a definition in substance, by saying that, "fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments, which involve a breach of legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another."

Applying this view of fraud in the court of equity, how does this case stand upon the bill? It contains, in the first place, a specific charge that the attorney for the petitioners for partition, without the knowledge, consent or authority of John Wright, the complainant, entered their appearance for him, acting at the same time for the petitioners, and entered into a consent and agreement to allow a large number of false and spurious claims in favor of Marsh, Lee & Delavan, and others, so as greatly to swell their interest, and thereby proportionably to diminish his. It then proceeds to aver that all the claims so allowed, except the thirty-three shares and one-fourth of a share, as enumerated in the bill, and set forth, are fraudulent and unjust, could never have been substantiated by legal proof, and would never have been admitted into said decree, except by such compromise; that the actings and doings of the parties, conductors and others, concerned in making the compromise, are contrary to equity and good conscience;

and that, by reason thereof, the complainants have been, and are greatly injured and defrauded in the premises. The charge of fraudulent confederation and collusion in making the compromise is clearly made against the parties thereto and the conductors thereof, they having so combined to cheat and defraud the complainants in the premises, and thus to deprive them of their just right; and to endanger and disturb them in the quiet enjoyment of their possessions and improvements on the tract of land aforesaid. The bill also charges that fraud and deceit were practiced upon the court by inducing it to believe that the compromise was brought about by mutual consent of the rightful owners of the land, and proper parties to the proceeding, or those duly authorized to act in their behalf; that in fact, all this was untrue.

That persons interested in land, as owners, being tenants in common, may, by consent and agreement among themselves, *bona fide*, make a division thereof, so as to sever their interests, and thereupon, waiving the ordeal of trial by proof in court as to title, procure a decree of partition, is not doubted. In doing this, however, if there be owners whose interests are involved, who are not personally present, and do not participate in such consent, or who are not represented legally in the transaction, and whose interests or just rights may be injuriously affected or lost thereby, such persons may seek and find redress in a court of equity. If, in the procurement of such decree or judgment, fraud be resorted to, by the parties obtaining it, then upon a proper case being made out by those who may have been injured by it, a court of equity will, in the exercise of its power, give relief.

It is admitted that the bill charges fraud in *general* terms. Then, if it contains any allegations of fact upon which the equitable interposition of this court is invoked, what are they? Do they show that the defendants used cunning, deception, or artifice, to circumvent, cheat, or deceive the complainants? And do they charge defendants with positive or actual fraud in the fact? or that they

are justly chargeable with acts, omissions, and conceal-
ments, which involve a breach of legal or equitable duty,
trust or confidence, justly reposed, and by which the com-
plainants are injured? The fact that the decree was not
obtained in the ordinary mode of trial, as to proof of the
rights of complainants to the land, but by consent, is clear-
ly stated. Also, that very many of the persons who peti-
tioned for a decree, and who participated in the consent,
or compromise upon which the decree was made and en-
tered, and who were benefited thereby, had no good or le-
gal right, or equitable title, to any part of the tract of land
which was divided among them; that about two thirds
of the claims admitted and allowed were spurious, fraud-
ulent, unjust and illegal; and being so, were taken into
the decree, so as to swell the interests of Marsh, Lee &
Delavan, and diminish the interests of the complainants
in the land, are fully charged. The bill here, we think,
not only charges, specifically, facts which amount to omis-
sions and concealments in making the compromise or con-
sent, involving a breach of equitable duty, but that peti-
tioners knew such claims of Marsh, Lee & Delavan, and
others, were fraudulent, false and spurious, and that they
fraudulently confederated and colluded with each other,
with the intent to defraud and cheat the complainants.
In this the bill goes farther than to charge mere construc-
tive fraud; and in terms judicially intelligible, charges ac-
tual fraud on the defendants, on the ground of deception,
artifice and circumvention.

But it is urged that the proceeding was regularly in
court, in accordance with the provisions of the law of the
state; that the complainants had legal notice, and that it
was their duty to attend to their rights and interests in the
land. We consider that the bill furnishes a fair and full
answer to this position, so far as Wright is concerned.
He charges that, at the term of the court when the decree
was made upon the compromise, and before either was
made, he was in attendance for the purpose of seeing to
his rights, and that he was told by one of the counsel of

the petitioners that the cause would not be tried at that
term; that under this assurance of the counsel, he left
the court and went home. He also charges that by this
act of the counsel he was fraudulently and deceitfully in-
duced to believe that his presence was no longer necessary
at that term of the court, and therefore he failed to attend
to his rights. This act of the counsel is laid in the bill
as having operated to defraud him. An attorney or coun-
sel, when acting in court procedure, for his client, acts in
his stead. His acts, in managing the business in court,
are the acts of the client. It will not be doubted, that, if
the party to a proceeding in court would, by fraudulent
representation, procure his opponent's defeat in the like
manner, as stated in the bill, in this case, the party injured
might be relieved in a court of equity on the ground of
fraud. Then in the case of an attorney, when acting for
his client, the same principle of equity and good conscience
clearly applies. If it did not, much confusion and injus-
tice might be found to exist. We think the fact as stated
in the bill, that Wright was induced to leave court, taken
in connection with the fact, which is also alleged as a ground
of fraud, that the attorneys of Marsh, Lee & Delavan,
and other petitioners, appeared and acted for Wright, the
complainant, without his authority or knowledge, presents
a clear exception to the general rule, and was sufficient to
meet and overcome the demurrer.

It may be said that the fact that the attorneys having
appeared for Wright without authority, ought not to af-
fect the petitioners for partition, and the others benefited
by the compromise and decree. But, they were the attor-
neys of Marsh, Lee & Delavan, and others, who were seek-
ing to be benefited by the decree, at the same time. The
attorneys, according to the averments of the bill, must have
known that they had no authority to appear for Wright
in making the compromise. When the rights of parties
are involved in legal action, such knowledge of the attor-
ney is, in the general, considered as notice to the client.
But clearly, if the attorneys knew that Wright had given

them no authority to appear and consent to the compromise for him, and they failed to inform the parties to it of that fact, it was a breach of duty and against good conscience. Story's Eq. Com. 395, § 408; *Astor* v. *Wells*, 4 Wheat. 466, 4 Condensed 513; *Fulton Bank* v. *N. Y. & Sharon Canal Co.*, 4 Paige 137.

But, supposing that the attorneys who appeared for Wright had been authorized by him to act as his attorneys in the case, will it be contended that an attorney may, by consent and compromise, in a case of partition involving rights and interests to a vast amount, admit a large number of unjust, illegal and spurious claims, to the prejudice and manifest injury of his client, without his knowledge, consent and authority? It is true that courts of equity will be disinclined to disturb a consent or compromise made by an attorney who is authorized to appear for a party to a suit, unless it will operate unreasonably to the prejudice of the interests of that party; still, where it works great injustice, equity will give relief from it. In the case of *Holker* v. *Parker*, 7 Cranch 436, the court decided that " although an attorney at law has no right to make a compromise, yet a court will be disinclined to disturb one which was not so unreasonable in itself as not to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed upon, or not fairly exercised. But where the sacrifice is such as to leave it scarcely possible that, with a full knowledge of every circumstance, such a compromise could be fairly made, there can be no hesitation in saying that the compromise being unauthorized, and being therefore void, ought not to bind the injured party. Though it may assume the form of an award or a judgment at law, the injured party ought to be relieved against it." This decision speaks the language of sound equity, and, with a proper reference to the relation existing between an attorney and his client, limits the profession to its sphere of representative action, leaving the party represented, profes-.

sionally, the indisputable right of disposing of his own property according to his will.

In contemplation of equity it is not allowable for attorneys or agents making contracts or agreements, with or without authority, to act, in the making of them, *mala fide*, so as injuriously to affect others who stand in such a relation to them as to be affected by the contract or the consequences; as others besides the parties contracting are concerned, it is properly said to be governed by public utility. Story's Eq. Jur. 326, § 133.

This principle is fully recognized by the supreme court of Illinois, and is brought within the corrective power of equity jurisdiction. In the case of *Truett* v. *Wainwright et al.*, 4 Gillman 420, the court say: "The setting aside of judgments, as well in the case where they were procured by the misconduct of the plaintiffs, as where they were obtained by the unauthorized appearance of strangers, rests at last on the ground of fraud. The law looks upon such practices, however far the parties may have been from the thought of actually committing a wrong, as fraudulent, and treats them as such." To prevent injustice of this kind is, in the same case, said to be one of the most efficient, and therefore most valuable, powers of a court of equity.

The principle, that an attorney cannot receive anything but money in satisfaction of a demand put into his hands for collection, without authority to do so, from his client, has been decided by the supreme court of this state in the case of *McCarver* v. *Neally*, 1 G. Greene 360. In *Hopkins* v. *Mallard*, *id.* 117, it has been decided that an attorney, after the decision of a case in the district court, without authority from his client, is not warranted to follow the case, as such, into the supreme court and attend to it there, when the contract was to attend to it in the district court alone.

The books are not destitute of cases and decisions, emanating from the best lights of equity jurisprudence, clearly and distinctly showing that attorneys cannot, without

the consent and authority of their clients, make contracts or compromises which will operate injuriously upon their interests; that such acts do not appertain to their professional duty and responsibility. Courts of equity have, when a case is properly presented, entertained jurisdiction and given relief for wrongs of this description on the ground of fraud, and will still do so.

It is contended by the defendants that leave should have been obtained from the court below to file this bill, and that it therefore should not have been entertained. Where a decree or judgment in partition, such as the one complained of here, is alleged to have been obtained *by fraud*, it may be impeached by an original bill without the leave of the court. The fraud used in obtaining the decree being the principal point in issue, and necessary to be established by proof before the propriety of the decree can be questioned. Mitford's Ch. Pl. p. 138. And where a decree has been so obtained, the court will restore the parties to their former situation, whatever their rights may be. *Idem,* p. 139. And on the same page, express and pointed authority is given for the entertainment of the bill in this case. Mr. Mitford says: "When a decree has been made by consent, and that consent has been fraudulently obtained, the party grieved can only be relieved by an original bill." That the remedy in such case is by an original bill, cannot with propriety be questioned; and such is the mode for relief where judgments at law are obtained by fraud. *Fermor's case,* 2 Coke p. 77; *Anderson* v. *Anderson,* 8 Ohio 108; 2 Vesey, 135; 3 John. Ch., 280; 2 Blackf. 271; *Porter* v. *Moffat,* Morris 108.

It is contended that the remedy of the complainants is against the attorneys, if they have appeared without authority, or acted improperly, so as to injure them in making the compromise and procuring the decree. Such, however, is not the law, where their conduct is charged to be fraudulent. If their conduct in procuring the compromise and entry of the decree or judgment thereon, be fraudulent, the party, or client, is not bound by it, for it is void

De Louis *v.* Meek.

in law, particularly if the acts so performed were done in fraudulent confederation and collusion with others, who stood in a relation to the proceeding to be benefited thereby. *Sloo* v. *Bank of Illinois*, 1 Scam. 444 and note; *Denton* v. *Noys*, 16 John. Ch. 296.

But it is urged, with much apparent confidence, that the complainants here, and particularly Wright, are not in a condition to claim relief, for the reason that they have been benefited by the compromise and decree, instead of being injured. This position is presented on the view, that all that has been charged in the bill be true and sufficient, in point of fact and law, to show that fraudulent claims were allowed, as stated in the bill; and that the attorneys who acted for Wright in making the compromise did so without his knowledge and authority.

The bill states that the "half breed tract" contained one hundred and nineteen thousand acres of land, more or less; that there are but thirty-three or four *bona fide* claims, or original titles to shares of "half breeds" thereto, under the treaty and act of Congress; and that by the compromise or consent decree, the claims are made to amount to one hundred and one, by the admission of spurious or fraudulent titles. Taking the allegations of the bill to be true, it is clear that the complainants must be injured by diminishing their interests in the land, by the increase of the number of claims or shares. The statement in the bill will make a difference, in the amount and value of the interest of the complainants, in diminution of about two-thirds of their rights. We are of the opinion that the allegations of facts, in the bill, do not show that the complainants were benefited, but that they have been injured substantially and materially.

In this view of the case it is urged that the complainant Wright, having failed to appear in person to take part in the making of the compromise, would have been barred from receiving any portion of the land; whereas, by the appearance and acts of the attorneys for him in the transaction, he was made a participant with others who were

9

admitted to the benefits of the compromise and decree. To sustain this position the Statute of Iowa, which provides for the partition of lands, is referred to. The 36th section of that statute is cited, which provides that "where all the parties in interest shall have been notified to appear and answer the petition, either by the service of the summons, or by the publication hereinbefore prescribed, the judgment aforesaid shall be binding and conclusive upon all persons whatsoever."

We think it all sufficient, on this point, to say that this statute must be held to apply to all proceedings which may have been had, with its legitimate force and effect, where such proceedings are had *bona fide;* but it never was intended to cover up proceedings *mala fide.* Such a construction of it would be at variance with the plainest principles of law and justice. The purifying power of equity jurisprudence will not thus be stayed. To impute to the legislature a design to sanction fraud by solemn enactment, would reflect upon their integrity. Fraud vitiates the most important judicial acts when found to exist in them, and renders them void upon discovery before the proper tribunal.

If Wright had been personally present, or if he had, like De Louis, been represented in making the compromise, still if the petitioners, or their attorneys had acted fraudulently either by misrepresentation or concealment so as to deceive and injure them in their rights, they would be entitled to relief in a court of equity.

The negligence of Wright is also urged as a reason why he has no equitable claim to relief. There can be no doubt that this would operate against his right to the equitable interposition, if he sought to be relieved from the effect of mere irregularity in the proceeding of the court in making the partition, and when he had failed to be vigilant in asserting his rights. But in this case the bill charges *fraud* upon the petitioners and attorneys, in making the compromise, and in procuring the decree to be entered and confirmed, by. practicing deception upon the court.

We have not been able to find any authority for requiring a party to be on his guard against fraudulent acts, by combination or otherwise, and on.failure to prevent which, he will be held as negligent and in default. The spirit of the law moves in a pure channel, imparting life and vigor to justice in disposing of the rights of the citizen. A suitor in court, or one whose interests are at stake there, has an indisputable right to legal protection, and to be dealt with in all fairness. He will be held to suffer the legitimate effects of his own negligence, but no more. Such is the subtlety of fraud, its infinitude of character and shape, and its power of insinuation, when conceived and brought to life and action, that the most sacred and best guarded citadels of right and justice among men are not always safe from its invasion. Wright could not be presumed to prevent the fraud by his personal presence and attention, and the law does not recognize this answer to his complaint as good. The bill avers that he and De Louis and wife, the complainants, were not in any way participant in the transaction upon which the fraud is charged. This we deem sufficient on this point.

In a bill of this kind it cannot be successfully contended that more is required than to state every material fact upon which the complainants intend to offer evidence, distinctly and clearly. A general and substantial charge of such a fact is sufficient. It is not necessary to charge minutely all the circumstances which may conduce to prove the general charge; these circumstances are for the matter of evidence which need not be charged in order to let them in as proofs. Story's Eq. Pl. p. 24, § 28; *Whelan* v. *Whelan*, 3 Cowen 57.1. In 6 Howard 120, *Davis* v. *Teleston, et al.,* Judge Woodbury, in delivering the opinion of the court says: "The existence of fraud in obtaining the original judgment, which is the other ground assigned for relief, is next to be considered. It is not only alleged generally, but in details, so far as already specified in this opinion; a general allegation of it in the bill would have been sufficient, if so certain as to render the subject mat-

ter of it clear." In support of this position he cites the cases of *Nesmith et al.* v. *Calvert*, 1 Woodbe & Minet 44; *Smith* v. *Burnham*, 2 Sumner 612; *Jenkins* v. *Eldridge*, 3 Story 181.

In the case at bar the substantive facts upon which fraud is charged, are so stated as, with certainty, to render the subject matter of the bill clear, as to the allegations therein made. We therefore are of the opinion that the court below should have overruled the demurrer of the defendants and put them upon their answer to the bill upon its merits.

In concluding our decision upon this interesting case we have only to add that we have given it a most patient and careful investigation, commensurate, we trust, with its importance. We have paused, reflected maturely, and would willingly have avoided a decision which may possibly disturb titles which have become vested under the decree of partition, and open the door for future litigation. Sensible that consequences, weighty in their character, may emanate from a decision which will put in issue the facts charged in the bill, still, it is no less the duty of this court to decide the questions of law presented in the elaborate arguments according to the principles of equity jurisprudence. Guided in our determination, by the brightest judicial lights of the country, we have endeavored to reflect the law as we find it in the books. This we consider a duty for which there is no alternative, and paramount to consequences however to be deplored. Avoiding any intimation in relation to the merits of the case, we are of the opinion that the bill shows sufficient equity on its face to put the defendants on answer. The cause will therefore be remanded to the district court of Lee county for further proceedings to be had not inconsistent with this opinion.

Decree reversed.

*J. C. Hall* and *D. Rorer*, for appellants.

*C. Mason* and *C. Walker*, for appellee.