HEARD APRIL TERM, 1874.

## THEW *vs.* PORCELAIN MANUFACTURING COMPANY.

A confession of judgment by a manufacturing corporation, given by its President, for money borrowed, set aside. it not appearing that power to give it was expressly conferred, or was to be inferred from the acts, declarations and course of dealing of the corporation, or that the confession had been ratified and confirmed by acquiescence or otherwise.

The President of a manufacturing corporation has no power, merely as President, to give a confession of judgment.

A judgment dismissing a complaint, not upon the merits, but upon some technical ground, as that neither the complaint nor the evidence showed a cause of action sufficient to give the Court jurisdiction by action under the Code, is no estoppel.

There was no Statute of Limitations in 1868 barring the right to move to set aside a judgment for irregularity.

A confession of judgment by a corporation need not be under its corporate seal.—*Ob. dic.*

A confession of judgment by a corporation, through its officer duly authorized, is the direct act of the corporation. and not its act by agent or attorney, within the Act of 1785.—*Ob. dic.*

BEFORE CARPENTER, J., AT EDGEFIELD, MARCH TERM, 1873.

This was a special proceeding, commenced by rule to show cause, to obtain an order setting aside a judgment for irregularity.

The facts were these : The Southern Porcelain Manufacturing Company is a corporation, under a charter from this State, granted in the year 1856. In 1868 it carried on business in the County of Edgefield, at a place which was afterwards included within the limits of the new County of Aiken. R. B. Bullock was then, and for

several years previous had been, the President of the corporation, and G. Schaub, its General Agent. On the 15th day of May, 1868, Bullock, acting as President of the corporation, gave to "George W. Thew, Cashier of the National Bank of Augusta," in the State of Georgia, a confession of judgment "for the Southern Porcelain Manufacturing Company," in the sum of $56,383.98. It was signed

"SOUTHERN PORCELAIN MAN'G CO.,

"R. B. BULLOCK, President and Treasurer," [L. S.]

and immediately below the signature was a note, or memorandum, in these words: "The company having no common seal, R. B. B.," and it was written or endorsed upon a declaration in assumpsit, in which Thew, as Cashier, was plaintiff, and the corporation was defendant, and which counted upon a promissory note for the same sum as that of the confession. This note was given in consolidation of two other notes, dated the 24th March, 1868, one for $35,185.86, signed by G. Schaub, as the General Agent of the corporation, and the other for $20,615.75, signed by Bullock, as its President. The confession was given at Augusta, and on the 19th day of the same month and year judgment thereon was duly entered in the Clerk's office of the Court of Common Pleas for Edgefield County.

The consideration of the two notes, dated the 24th March, 1868, was money previously and at different times loaned by the bank for the use of the corporation. The last loan was one made in August, 1867, for $5,000, at which time it was agreed between Bullock and the officers of the bank that, in consideration of the loan then made, the whole debt due to the bank should be secured by a confession of judgment with stay of execution for one year. The consolidation note and confession of the 15th May thereafter was given in pursuance of that agreement.

Shortly after the confession was given Bullock resigned his office of President, and James Hope succeeded him.

In February, 1871, the corporation commenced an action, by summons and complaint under the Code, against Thew, to set aside the judgment for irregularity. This action was tried at Aiken, May Term, 1873, before His Honor Judge Maher, who decided the case upon its merits, and, on the 5th August, filed his judgment, whereby he dismissed the complaint, on the ground that the judgment by confession was valid and binding upon the corporation. An appeal was taken to the Supreme Court by the corporation, and, at November Term, 1873, the appeal was heard. The Supreme

Court declined to consider the case upon its merits, holding that neither the complaint nor the evidence stated or established a cause entitling the plaintiff to relief in the form of proceeding it had adopted, that is, by action under the Code; that, in that form of proceeding, the Court was without jurisdiction; and, on the 22d December, 1873, the judgment of the Court was filed dismissing the appeal. See the case as reported, *ante*, p. 5.

Thew, being about to enforce his execution upon the judgment by confession, by levy and sale of the property of the corporation, on the 1st January, 1874, a notice was served upon him, that, upon the evidence and affidavits used at the trial of the action above mentioned, a motion would be made before Judge Maher, on the 5th, for an order requiring him to show cause before the Court for Edgefield why the judgment should not be set aside and vacated, upon the grounds taken on the appeal from Judge Maher's decision; and also on the further ground that the confession was made in Augusta, in the State of Georgia, and in fraud and collusion between Bullock and the bank; and also to set aside wholly, or to suspend until the final decision in this proceeding, the execution on the judgment.

The motion was made before His Honor Judge Maher, who granted an order, by which, after reciting that the Judge of the Fifth Judicial Circuit was absent from the State, he ordered that the execution be stayed until further order therein shall be made by the Court of Common Pleas for the County of Edgefield. This order was dated January 5th, 1874.

Thew, the plaintiff in the judgment, gave notice that he appealed from the above order, and would move the Supreme Court to revoke the same, on the ground that it is contrary to law; that the Judge of the Fifth Judicial Circuit has no jurisdiction of the case, and, if he had, that it is *res adjudicata*.

On the 23d January, 1874, a second notice was served upon Thew, in nearly the same terms as the notice of the 1st January, above mentioned, that a motion would be made before Judge Carpenter for an order to show cause why the judgment should not be set aside and vacated upon the same grounds set forth in the first notice; and on the 21st February, Judge Carpenter made an order to show cause, as applied for, and also an order to suspend all proceedings upon the execution until the final determination of the proceeding.

Thew made return to the rule, wherein he showed, for cause, why the judgment should not be set aside and vacated—

1. That the judgment was confessed and entered in May, 1868, and the acquiescence therein for near six years, even had there been fraud in the same, constitutes an implied ratification, three years being sufficient to raise such an implication, even against an infant.

2. Because the confession was made in good faith, to secure a *bona fide* debt, which was discounted by the bank in the regular course of business, and used by the company for the improvement of their property.

3. Because, if there be fraud in the confession, it was committed by R. B. Bullock and George Schaub, who the company held out to the commercial community, the one as their President and Treasurer, sole Director and accredited Commercial Agent, the other as their General Agent, thus enabling them to practice a fraud on the bank, who is an innocent creditor.

4. Because, on the 24th of March, 1868, George Schaub, the General Agent aforesaid, the active mover in this proceeding, made his note for $35,185.86 to the bank, at thirty days, which is signed "G. Schaub, General Agent Southern Porcelain Manufacturing Company," which note is endorsed by R. B. Bullock and J. Jefferson Thomas, the then partner of Schaub, and a stockholder in the company ; and on the same day R. B. Bullock made another note for $20,615.75, signed by him as President, and endorsed by him, which two notes, with the interest, make the note on which the confession was made ; so that if there be fraud in the transaction, it was a fraud committed on the bank by the accredited agents of the company.

5. Because the case is *res adjudicata.*

6. Because the Statute of Limitations is a complete bar, and which is now pleaded.

7. Because the Court has no jurisdiction.

The return was supported by affidavits of W. E. Jackson, President of the Bank, Thew, its Cashier, and Judge Gould, its Solicitor at the time the confession was given.

On the 10th March, 1874, the rule was heard, and His Honor made the following order :

CARPENTER, J.   Upon hearing the return of the plaintiff, George M. Thew, to the order requiring him to shew cause why the judgment in this case should not be vacated and set aside, and after due

consideration of the same, and of the argument thereupon by the counsel of the respective parties, it is ordered that the defendants, the Southern Porcelain Manufacturing Company, have leave to file their suggestion, setting forth the grounds upon which they seek to vacate and set aside the judgment by confession in this case; that the said plaintiff, George M. Thew, do plead to the said suggestion so to be filed; and that the said defendants be the actors in the said suggestion.

And it is further ordered, that after the filing of such suggestion, a copy of the same be served upon the attorneys of the said plaintiff, and that, within thirty days thereafter, a copy of the pleading of said plaintiff to the said suggestion be served upon the attorneys of the said defendants; and that, thereupon, the issue so made up be entered by the Clerk upon the proper docket of this Court.

From the above order the plaintiff appealed, on the grounds:

1st. That it is contrary to law, for, while the notice charges "fraud and collusion," the affidavits do not support the charge.

2d. That His Honor Judge Carpenter has no jurisdiction.

3d. That the case is *res adjudicata*.

4th. That acquiescence for three years is ratification.

5th. That the Statute of Limitations is a complete bar.

The defendant also gave notice of appeal, as follows:

From the order made by His Honor Judge Carpenter, dated and entered in the office of the Clerk of the said County, on the 10th March, 1874, the defendants appeal, and will endeavor to maintain that the proper order in this proceeding would have been an order to vacate and set aside the judgment in this case; and in support of their said appeal the defendants will rely upon the grounds following:

In the return of the plaintiff to the order requiring him to show cause why the judgment by confession in this case should not be set aside, there is no denial or question whatever of the facts following:

1. That the confession of judgment in this case was made before "action brought."

2. That the corporate seal of the defendants, the Southern Porcelain Manufacturing Company, is not affixed to that confession.

3. That said confession of judgment was made in the city of Augusta, in the State of Georgia, by Rufus B. Bullock, then the President of the said company; and it is, therefore, respectfully

submitted that the said judgment is, by the operation and effect of
the Act of Assembly of 1785, (7 Stat., 232,) "absolutely null and
void;" that His Honor the Circuit Judge ought, therefore, to have
ordered that the said judgment be vacated and set aside; and he
having failed so to do, that such order ought now to be made by the
Supreme Court of South Carolina.

*Aldrich*, for Thew, plaintiff.

*Carroll, Bacon*, for the corporation.

Nov. 9, 1874. The opinion of the Court was delivered by

WRIGHT, A. J. By the understanding of the counsel on the
hearing of the case in this Court, its consideration is not to be limited
to the grounds of appeal from the order of His Honor Judge Maher,
of January 5th, and that of His Honor Judge Carpenter, of March
10th, 1874.

The discussion embraced all the points not only made by the
pleadings and the evidence in the case of the Southern Porcelain
Manufacturing Company and Thew, Cashier of National Bank of
Augusta, but involved the grounds on which Judge Maher, by his
decree of 5th August, 1873, sustained the confession of judgment
which is the subject of the present litigation between the parties. Its
validity is now the question for our determination. There can
scarcely be any dispute as to the legal principles which are to be
applied in the examination and decision of the case before us. So
far as they refer to the relations which exist between principal and
agent, they must be so well understood as scarcely to need a
reference to the authorities which establish them.

Where a question is made as to the acts of agents, which cannot
be referred to any special or express authority, and can only have
validity through an implication of authority, the same rule applies
to corporations which obtains between individuals in the same con-
nection. "Indeed, by the whole course of decisions in this country,
corporations, in their contracts, are placed upon the same footing
with natural persons, open to the same implications, and receiving
the benefit of the same presumptions."—Ang. & A. on Corp., 218.

The act of no agent can bind his principal, if it is not within the
scope of his authority; but the extent of the authority is not to be
regulated by, nor is it dependent upon, an express grant; but it
may be measured by the transactions of the agent with third per-

sons, with the knowledge and approval of the principal, where the rights and interests of the latter are concerned.

There may be no error in respect to the legal principle upon which the Circuit Judge rests his conclusions. In our view, however, the error consists in drawing wrong conclusions from the facts, and applying the requisitions of the law, as if to legitimate deductions.

The principle affirmed by Mr. Justice Story, in *Bank* vs. *Dandridge*, 12 Wheat., 70, and referred to in the decree, must be admitted as a controlling rule, where it applies. It is founded on the doctrine of pre-sumption, from which " a delegated authority " is inferred. Giving it the utmost possible extent, and examining with care the pleadings and the evidence in the case, we cannot conclude "that the confession of judgment in question was an act within the powers conferred upon President Bullock, comprehensive as they may have been."

He who proposes to bind another by the act of a third party must show his authority to do so. He who avers that an act in his favor, affecting another, committed by a third person, was by the authority of such other, must show it. While he is not required to exhibit written warranty, or, even between natural persons, a specific verbal direction, he must show such a course of action, in regard to his dealings for and on behalf of the supposed principal, with his knowledge, as would lead others, with whom he dealt, naturally to conclude that he was clothed with full power to execute the proposed act. It is not to be understood that the rule is to be so narrowed as to require a party to show that an act of the identical or like character with the one with which it is sought to charge the principal has been recognized and sanctioned by him. If the act can be referred to general powers, presumed from other and previous transactions—if the nature of the former dealing was of a kind to impress the community, from their confirmation by the principal, with the belief that a general and unrestricted power in this particular line of business was intended to be conferred—or, by silence of the principal, an impression, even erroneous, was made on the public, he would still be bound.

The rule, as stated by Chief Justice Marshall, in *Schernnelparmick et al.* vs. *Bayard et al.*, 1 Peters, 290, is as comprehensive in presenting the principle in question as if it had been extended by more diffusive expression. He says: "It is believed to be a general

rule that an agent with limited powers cannot bind his principal, when he transcends his powers. It would seem to follow that a person transacting business with him, on the credit of his principal, is bound to know the extent of his authority; yet if the principal has, by his declaration or conduct, authorized the opinion that he had given more extensive powers to his agent than were, in fact, given, he could not be permitted to 'avail himself of the imposition, and to protest bills, the drawing of which his conduct has sanctioned." This inference depends on the nature of the acts themselves, and the effect which is to be given to them through the evidence in the particular case.

The Circuit Judge here has drawn a conclusion from them adverse to the company, which is claimed to be bound by the judgment.

Our examination of the pleadings and the evidence leads us to a different result. We are not unmindful of the indisposition of the Court to interfere with the conclusions of the Circuit Judge on questions of evidence. His decision on the facts will not be disturbed, when their determination rests upon doubtful or disputable proof, unless it is clearly erroneous and overborne by the weight of testimony.—*Sullivan* vs. *Thomas,* 3 S. C., 545; *Womack* vs. *Austin,* 1 S. C., 428; *Blackwell* vs. *Searles,* 2 S. C., 177; *Williams* vs. *Beard,* 1 S. C., 325. And the *onus* will be thrown on those who assail it to show wherein the error consists.

After 10th March, 1862, according to the by-law on that day adopted, the stockholders of the Porcelain Manufacturing Company constituted the Board of Directors, three of whom were to make a quorum. Bullock, on the 1st of March, 1864, was elected President, and so continued until May, 1869. Although it is true that the general if not the active business of the company was committed to him, we fail to discover in the testimony any act of his in negotiating loans on account of the company, without its knowledge, or engaging in any "transaction involving precisely the same general powers." There is a manifest difference between the incurring of debts by the President or Manager of a corporation, for the current expenses which are absolutely necessary for the prosecution of the work in which it is engaged, and raising money, on loans, pledging the property of the company for thier payment. The one way will be looked for in the routine of a business, the other is of an extraordinary character, only occasionally resorted to, and, from the very circumstances, should demand of those who treat

with the officer of a corporation, in a matter of that kind, at least the exercise of so much caution and prudence as may be necessary to ascertain the authority under which he acts. If, as is said, the company was required, at its peril, to see that its officers did not habitually transcend their powers, it surely may be answered that parties dealing with one who professes to represent another, and to bind him by his acts, should be required to make some inquiry as to the right and power by which he is authorized to engage in the particular transaction. It is not contended that Bullock had even any general power to contract debts on the credit of the company. The very course of the stockholders, in regard to loans for the use of the company, seems to imply a want of power on the part of Bullock to raise them at his own will and at his option. Thus, on January 10th, 1866, the stockholders authorized the President to negotiate a loan of $5,000, and pledged therefor the works of the company. On 23d April, 1866, another loan of $8,000 was authorized to be raised by the President. On the 6th September, 1866, a report was made to the stockholders by the President, giving a full and elaborate account of the progress of the company, and the character and extent of its operations.

It, therefore, appears that to meet bills due, and to fall due, (including the previous loans,) the company, on the 1st of October following, would have a total indebtedness against it of $43,000, for the payment of which the works and franchises of the company were pledged.

As is said by the Circuit Judge, "in what form the company's property and franchises had been pledged, was not stated in this report, nor does it appear in the evidence. It may have been merely a pledge of credit." No loan was suggested in the report, but a recommendation that the required amount be raised by an assessment on the capital stock of fifty per cent. The paper was referred to a Committee to report on a fixed day, and, in the meantime, a resolution was adopted authorizing the President to negotiate a loan of $19,000, and to pledge therefor the property of the corporation to pay off the indebtedness of the company and place it in full operation. On the 10th September thereafter the Committee made its report, and recommended the assessments—the amount to be secured by a resolution of the stockholders pledging the property and profits of the concern for its payment.

The amount was to be raised by notes of the stockholders, at

ninety days, without interest. That if the said call was not responded to by the 1st October ensuing, the President was authorized to sell the property and works of the company to pay the debts of the concern, the surplus, if any, to be divided *pro rata* among the stockholders. The report was received, the resolution appended adopted, and the report, both of the Committee and the President, with accompanying papers, ordered to be printed. The notes were given payable at this very bank, to the order of President Bullock, and were met after maturity. The company, after this provision, not only for the payment of its debts but for the current expenses of its work, may well have rested under the impression that its affairs had all been satisfactorily arranged, particularly when they had individually incurred a liability for the benefit of their corporation, and more especially when their President had not communicated to them any necessity for a new loan, or to raise money in any form.

The ratification by the Board of the acts of Bullock merely affirmed what he had already done, not in the raising of any loan, but in the contracting of debt, which the company recognized and assumed. So far from implying a power to negotiate loans, or borrow money in the future, the very fact that its sanction was deemed necessary to confirm what had been done was a declaration by the company that it had never been granted. The action, too, of the stockholders, in raising the amount to meet the liabilities of the company by an assessment upon themselves, requiring a loan to be secured "by a lien upon the property and profits of the concern for its payment," is a clear intimation that they preferred to be themselves creditors of their own company, rather than to stand in that position either to the President or others. It is also not without significance in another regard, and that is, the apparent intention, by their action, of freeing their corporation from debt, and so keeping it, and if they failed to raise the money through themselves, to sell the property and wind up the company.

After this deliberate action on the part of the body by accommodation loans to President Bullock, and by discounts of drafts of Schaub, the General Agent of the company, within a little over six months from the time that the stockholders had furnished Bullock, for the use of the company, with $50,000, a liability was claimed against it by respondent, the National Bank of Augusta, for $65,000, including the $5,000 advanced to the President as a further loan, in consideration of the confession of judgment, and

this, too, on the part of a bank at which the notes of the stock-holders had been payable, and through which they had been collected, and which, it is no forced inference to draw, did know the action of the corporation in September, 1866.

Assume, for the present, that the company was liable to the bank for the debts thus created, was the confession and act within the scope of the powers of the President of the company? for if it was not, it did not bind it. That it was not in the ordinary powers of his office, is almost admitted by the attempt to sustain it as an implied authority, from the course of the dealings of the company, in regard to the President, and his course in the management and conduct of its affairs; for no act, not within such ordinary course, can bind the corporation, unless done at its instance, or direction, or with its permission.

In *Fulton Bank* vs. *N. Y. and Sharon Canal Co.*, 4 Paige, 134, Walworth, C., said: " There is certainly nothing in the acts of incorporation giving the President any greater control over the property or funds of the companies than is given to any other Director. He, therefore, was not authorized to draw checks for money deposited in the name of the company, by virtue of his office as President merely. " So here, unless there is something to justify the bank in supposing that Bullock had power to secure the debt by giving a judgment, the confession is void and without effect. Even if conceded that Bullock had power to contract debt for the company to an unlimited extent, this could not imply the right to confess judgment to a creditor. The authority to contract debt for and on behalf of the company is one thing, but the right to give preference to a creditor is another; and it is still another to give a lien, which binds the whole property of the corporation, depriving it of the power to dispose of any of it, no matter what the pressure or necessity, or how small the whole debt, in comparison with the value of the property bound, without the permission of the creditor who may hold such lien.

The profits and property of this company had been pledged by its action in September, 1866, for the security of the amount then advanced by the stockholders. The irresistible presumption is, that the notes were not paid by the earnings of the company, and the lien, therefore, not released. But be that as it may, this resolution of the Board shows that the stockholders were not wanting in

the prudence which dictated a retention of their own property and its profits within their own control.

There is another circumstance, worthy of notice, in regard to the confession. By the finding of facts it appears "that President Bullock affirmed he was fully authorized to make the arrangements, and pledge the property of the company to secure the debt. Judge Gould, the solicitor of the bank, declined giving an opinon upon South Carolina law, and consulted with Judge Aldrich, of that State, upon the question of the validity of the proposed confession, Judge Aldrich advising *that a copy of the resolution authorizing Bullock to act in that matter be filed with the record.*"

According to the affidavit of Judge Gould, Bullock said: "There was no express resolution of the company authorizing him to make the arrangement." Full opportunity was thus afforded the bank to ascertain the exact nature of the powers conferred by the Southern Porcelain Manufacturing Company on its President, so that it could have been at once ascertained whether he had authority to make the proposed confession. Not only were they put on the inquiry for the written authority, if any existed, but their counsel advised that a copy of the resolution under which Bullock claimed his right to act should be filed with the record. "Where an authority purports to be derived from a written instrument, in such a case the other party is bound to take notice that there is a written instrument, and he ought to call for and examine the instrument itself, to see whether it justifies the act of the agent; for, under such circumstances, it is but a reasonable precaution and exercise of prudence, and he is put upon inquiry, and if, from his omission to examine, he should encounter a loss from the defective authority of the agent, it is properly attributable to his own fault, since he must know that he has no other security than his reliance upon the credit of the agent."—Story on Agency, § 72.

How can the bank complain that Bullock was enabled to practice any wrong by the position in which he was placed by the company, when it had within its power the means of ascertaining the precise authority with which he was vested, by a reference to the very terms by which it was granted.

We cannot see how the act of the confession by Bullock can be sustained by any reference to his general powers as President and Manager of the company, clothed with all the powers neces-

sary to its proper management. In Ang. & A. on Corp., 292, it is said: "The general agent of a manufacturing corporation is not authorized to sell or convey the real estate, or to mortgage or pledge as security for a loan the machinery of the company, without special authority, though it may be incident to his power, as agent, to borrow money, give promissory notes, and many other acts, in the ordinary course of the business of the company." *Stone* vs. *Wyse*, 7 Cowen, 219, is one of the cases referred to in support of the text, which it thoroughly sustains. The Court therein say: "It may be incidental to his power, as agent, to borrow money, give promissory notes, and to do many other acts in the ordinary business of the company; but the idea is quite novel that, merely as agent, he could sell or convey the estate. To effect such an object, special authority seems indispensable, nor is there any principle or precedent in support of the power set up in this case."

Our examination of the testimony does not satisfy us that there was, on the part of the company, any act of any kind which can be construed into a ratification or recognition of the judgment.

The ground assumed by the appellant, that the matter is *res adjudicata*, cannot be maintained.

The judgment of this Court in the case of the *Porcelain Company* vs. *Thew, Cashier*, did not dispose of the merits or pass upon any of the points on which the Circuit Judge based his decree. It was because the complaint did not set out any sufficient cause of action, and that none was made by the evidence introduced without objection by the defendant, that the appeal was dismissed. There was no ground alleged upon which the jurisdiction of the Court could attach in regard to the relief sought. The merits were not determined.

The note to the case of the *Dutchess of Kingston's Case*, 2 Smith's Lead. Cases, 672, well expresses the rule which must operate here in the particular now considered. "It is well settled that the estoppel of an adjudication made on grounds purely technical, and under such circumstances that the merits could not come into question, will be limited to the point actually decided, and will, therefore, not be a bar to a subsequent action brought in such a form as to avoid the objection which proved fatal in the first."

In *Gist* vs. *Davis et al.*, 2 Hill Ch., 342, Ch. Harper says: "The rule is unquestionable, that where the same matter has been deter-

mined by a decree between the same parties, that will be a bar to a new bill; but then it must appear that the rights of the parties were actually considered and adjudicated."

The proper construction of the 7th Section of Act of 1871, (14 Stat., 695,) cannot extend its operation beyond the suits then pending in the Counties named. The Judge, therefore, of the Fifth Judicial Circuit had jurisdiction of the motion which he entertained. The judgment was a record of his Court for the County of Edgefield. The order was made on the 10th March, 1874, and it was not until the Act of March 14, 1874, (15 Stat., 632,) that the records in the various Courts of the Counties—of parts of which the County of Aiken was constituted—where the defendants resided in the said County, were ordered to be transferred to it.

When the right accrued to the respondent to test the validity of the judgment by some legal proceeding, there was no statute fixing any limitation of time within which it must be commenced. Whether there now is it is not necessary to determine. According to the practice existing in this State, it would seem that if a motion to set aside a judgment was made in five years, it would not be barred by lapse of time.—*Mooney* vs. *Welch*, 1 Mill, 133.

The rule was adopted in analogy to the bar to the recovery of real estate. That has now been extended, and whether the analogy will follow it is not the question before us. There may be cases where lapse of time, with other circumstances, might operate to confirm a judgment within a period even less than five years.

We concur in the Circuit decree, in the view which it takes of the Act of 1785, in regard to the confession. A seal is not necessary to a confession of judgment by an individual, and we do not consider the *dictum* of the presiding Judge, in *Bivingsville Manufacturing Company* vs. *Bobo*, 11 Rich., as authority for the proposition that a corporation can only confess judgment before action brought by affixing the corporate seal. If it can confess judgment before action brought, by affixing the seal, and thus avoid the effect of the Act, the validity depends not on the party making it, (whether as the corporation, principal, or an agent or attorney,) but on the mere fact of the seal. "The general rule of law that a corporation acts by and under its common seal has, from the earliest times, been subject to exceptions, arising out of the extreme convenience, amounting almost to a necessity, of dispensing with the reason of the rule when its application would occasion great

trouble or loss of time, or tend to defeat the very object for which the company was created."—Grant on Corp., 60.

The general rule, even in England, has of late been much modified. "In this country, where private corporations, for every purpose, are so multiplied that their facility of action has become a matter of public importance, in the language of Kent, the technical rule has been condemned as impolitic, and essentially discarded."—Ang. & A. on Corp., 265.

The confession by a corporation, through its own officer, (duly authorized,) is the act of the corporation done by itself, and not, in the view of the Act of 1785, by an attorney or agent. It is as any other act of the corporation in which the signature of the officer (properly empowered,) is alone sufficient to impress validity.

The motion is refused, and it is ordered and adjudged that the said confession of judgment referred to in the pleadings be vacated and set aside.

*Moses*, C. J., concurred.

*Willard*, A. J., concurred to the extent of holding that the confession of judgment was irregular, and that the practice requiring a prompt application to set aside a judgment for irregularity is not settled in this State.