THE FIRST NATIONAL BANK OF HIGHTSTOWN v. JOHN M. CHRISTOPHER.

1. A bank discounting a note before its maturity is not chargeable with the knowledge of illegality or want of consideration acquired by one of its directors in other than his official capacity—such director not having acted with the board in making the discount.

2. A director offering a note of which he is owner to the bank of which he is a director, for discount, is regarded in the transaction as a stranger, and the bank is not chargeable with the knowledge of such director of an infirmity or defect in the consideration of the note.

3. P. was a member of the firm of M. & J. S. P., and also a director of the bank of H. He obtained at the bank the discount of a note belonging to the firm, which had been got of the maker by fraud. He had notice, as a member of the firm, of the fraud before the note was offered for discount, but did not communicate his knowledge to any of the officers of the bank. *Held*—that the knowledge of P. was not constructively notice to the bank.

---

On rule to show cause why the verdict should not be set aside.

Argued at February Term, 1878, before the CHIEF JUSTICE, and Justices DEPUE and SCUDDER.

For the rule, *F. Voorhees* and *P. L. Voorhees.*

*Contra, S. M. Schanck* and *W. D. Holt.*

The opinion of the court was delivered by

DEPUE, J.   The plaintiffs sued the defendant on a note made by him for the sum of $349.68, dated January 3d, 1877, and payable three months after date, to the order of J. M. Scovel, and endorsed by Scovel, and by M. & J. S. Perrine. The note was discounted by the bank on the 9th of January, 1877, and before maturity; and the proceeds of the discount placed to the credit of the firm of M. & J. S. Perrine.

The plaintiffs having rested, the defendant proposed to prove that the note was fraudulently obtained, and was without consideration.   The court regarding the bank as a *bona fide* holder for full value before maturity, overruled the defence, and directed a verdict for the plaintiffs.

The question discussed here was the correctness of this ruling.

The evidence offered was to show that the note was procured by the fraud of the attorney of the firm of M. & J. S. Perrine, in settlement of a judgment they held against one Wilkin.

Matthew Perrine was one of the members of the firm of M. & J. S. Perrine, and also one of the nine directors of the bank.   He had notice on the 4th of January that the note was obtained by fraud, as it was discounted by the bank on the 9th. · No other knowledge of the infirmity in the consideration of the note, was possessed by any director or officer of the bank.   Perrine did not communicate the information to the president, cashier or any of his associates in the directorship.   The defendant contends that notice to Perrine was notice to the bank, and that therefore the bank took the paper with notice, or was a holder *mala fide.*

The general rule is that notice to an agent is notice to his principal.   This general rule is not denied.   The inquiry is under what circumstances directors of a corporation are its agents for the purpose of receiving notice.

The directors of a corporation are not individually its agents for the transaction of its ordinary business, which is usually delegated to its executive officers, such as the president or

cashier.   Directors are possessed of extensive powers, even to the extent of absolute control over the management of its affairs, but these powers reside in them as a board; and, when acting as a board, they are collectively the representatives of the corporation.   Notice to directors when assembled as a board, would undoubtedly be notice to the corporation. Under what conditions knowledge acquired by a director in other than his official capacity, will be constructive notice to the corporation, and be binding on it, is not entirely settled in the cases.   A distinction has been taken between knowledge of illegality or want of consideration of a note, by a director who acts with the board in discounting it, and such knowledge on the part of a director who is not present and acting with the board when the discount is made.   In the former case it has been held that the bank is bound by his knowledge; in the latter it is not.   *Bank of The U. S.* v. *Davis*, 2 *Hill* 451; *North River Bank* v. *Aymar*, 3 *Hill* 262; *National Security Bank* v. *Cushman*, 121 *Mass.* 490; *Farmers, &c., Bank* v. *Payne*, 25 *Conn.* 444; *Farrell Foundry* v. *Dart*, 26 *Conn.* 376; *National Bank* v. *Norton*, 1 *Hill* 572; *Washington Bank* v. *Lewis*, 22 *Pick.* 24; *The President, &c.*, v. *Cornen*, 37 *N. Y.* 320; 2 *Leading Cas. in Eq.* 171, note to *Le Neve* v. *Le Neve*.   This distinction has been criticised and condemned by Justice Story as sapping " the foundations on which the security of all banking and other moneyed corporations has been supposed to rest, to wit, that no act or representation or knowledge of any agent thereof, unless officially done, made or acquired, is to be deemed the act, representation or knowledge of the corporation itself." *Story on Agency*, § 140, *b*.   It will not be necessary to consider the soundness of this distinction, for it is admitted that Perrine's knowledge of the infirmity in the consideration of this note was acquired when he was acting in his private capacity; and the opening of counsel did not propose to show that he was present at the bank when the note was discounted, and participated as a director in the act of discount.

Perrine simply occupied a two-fold relation.   He was a

member of the firm of M. & J. S. Perrine, and a director in the bank. In the absence of evidence that he acted in the capacity of a director in the discount of the note, the counsel must take their stand on the broad ground that in point of law the bank was chargeable, in virtue of his directorship, with knowledge of the private affairs of the firm. This position is obviously untenable. *Powles* v. *Page*, 3 *C. B.* 16. As a member of the firm and a director of the bank, Perrine was in the same position as a common director in two companies. Speaking on this subject, Mellish, L. J., says: "I cannot think that, because he was a common director to the two companies, we are on that account to say that the one company has necessarily notice of everything that is within the knowledge of the common director, and which knowledge he has acquired as director of the other company. It appears to me that a director is simply a person appointed to act as one of a board, with power to bind the company when acting as a board, but having otherwise no power to bind them." And James, L. J., characterizes the proposition that where a director of a bank is asking a loan for himself, it should be imputed to the banking company that they have knowledge of his own private affairs, as most unreasonable. *In re Marseilles Railway Co.*, L. R., 7 *Ch. Appeals* 161. The cases to the same effect are collected and commented on in the text and notes of Mr. Green's edition of *Brice's Ultra Vires*, page 424, *et seq.*

The counsel sought further to place this case on the ground that Perrine owed a duty to the bank, as a director, to communicate the information he had with respect to the note, and that his permitting the note to be presented for discount without such communication was fraudulent. They cited in support of their contention, *Fulton Bank* v. *N. Y. and Sharon Canal Co.*, 4 *Paige* 127. In that case, Cheeseborough was a director of the canal company, and one of the finance committee, and also president of the bank. As president of the bank he knew that the funds in question were deposited in the bank to the credit of the canal company. They were drawn from

the bank by Brown, on his checks as president of the canal company, and used for private purposes. The Chancellor held that if Cheeseborough knew the purpose of Brown in making the drafts, it was his duty to communicate the facts to the other officers of the bank or to the board of directors, and that if he neglected to do so, the bank was liable for his fraud. Cheeseborough, as president of the bank, knew the funds had been deposited in the bank to the credit of the canal company; and if he knew that it was meditated by Brown to appropriate the money to his individual use, it was incumbent on him, as an officer of the bank, not to aid in the misappropriation. The case decided nothing more than the well settled doctrine that a corporation is liable for the fraud of its agents acting within their authority, and in the due course of its business, and cannot shield itself from responsibility by showing that the agent also failed in his duty to the corporation. If it decided anything more, the case is directly in conflict with all the authorities, and contrary to legal principles which have been regarded as well settled; for if information within the private knowledge of a director is constructively notice to a corporation whenever it is his duty, abstractly considered, to communicate that information to his associates, the doctrine cannot practically be restricted within any bounds short of binding the corporation in all cases where a director has such private knowledge, though he may do no official act to which such information relates. See *Story on Agency*, § 1406. The case cited will not aid the defence. The fraud of Perrine, if there was any fraud in the transaction, was committed by him in the course of the business of the firm, and for the benefit of the firm exclusively. If any loss had resulted to the bank from neglect on his part in his duties as director, he might have been held liable for the consequences as between him and the bank. *Stewart* v. *Lehigh Valley R. R.*, 9 *Vroom* 505, 523. A corporation is liable for the fraud of its agents in transacting its business, but no case that has come under my observation has affirmed that it is

also liable for the individual frauds of its agents done by them individually, and for their individual benefit exclusively.

In negotiating the note with the bank, Perrine was dealing with it in his own interest, and must be regarded as a stranger to the company. *Stratton* v. *Allen*, 1 *C. E. Green* 229. The question how far the knowledge of an officer of a corporation, which he acquired outside of the business of the company, and which was not, in fact, communicated to the corporation, is binding upon it, when it relates to dealings between the officer and the corporation, was considered by the Chancellor in *Barnes* v. *Trenton Gas Light Co.*, 12 *C. E. Green* 33. The bill was filed to set aside a conveyance made by executors in fraud of the powers contained in the will. The conveyance was made to Mr. Potts, who was the legal adviser of the executors, and also president of the gas light company. Potts conveyed directly to the company, and the bill charged notice on the defendants solely on the ground that at the time of the conveyance to the company Mr. Potts was its president. On demurrer, it was held that the information which came to Mr. Potts' knowledge, as counsel of the executors, was not constructively notice to the corporation, and that the company was a *bona fide* purchaser without notice.

The defence proposed was properly overruled, and the rule to show cause should be discharged.