Combs v. Bradshaw.

---

WILLIAM S. COMBS

v.

WILLIAM P. BRADSHAW, Adm'r.

1. EVIDENCE—COMPETENCY OF WITNESS.—In a bill by an alleged surety against the administrator of the payee of a note, to restrain the prosecution of a suit thereon, on the ground that he signed the note as surety, and that payment of the note had been extended without his knowledge or consent, the principal in the note is a competent witness for the complainant to show the extension of payment.

2. PAROL, TO SHOW CONSIDERATION.—Parol evidence is admissible to

show that the consideration for the following indorsement on the note: "It is agreed by the parties to this note that the interest shall be at the rate of ten per cent. until paid," was an extension of the time of payment.

ERROR to the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding. Opinion filed April 2, 1880.

Messrs. IRWIN & SPRINGER and Messrs. BURROUGHS & BURNETT, for plaintiff in error; as to competency of the witnesses, cited Whitmer v. Rucker, 71 Ill. 410; Rev. Stat. Chap. 51, § 1; Kimball v. Cook, 1 Gilm. 423; Kennedy v. Evans, 31 Ill. 258.

The rule rejecting parol testimony to vary a writing, does not apply when only part of the contract was reduced to writing, nor to collateral undertakings: Chapin v. Dobson, Weekly Jur. Jan. 15, 1880; 1 Parsons on Contracts, 430; Bishop on Contracts, § 61; Mann v. Smyser, 76 Ill. 365.

A note ceases to draw more than the legal rate of interest after maturity, unless so specified: Holden v. Freedman's Savings Co. 8 Wash. Law Rep. 6.

A court of equity has jurisdiction of this case: High on Injunctions, § 832; Story's Eq. Jur. § 324; Brandt on Suretyship, § 209; Ramsey v. Perley, 34 Ill. 504; Magee v. Magee, 51 Ill. 500; Thomas v. Caldwell, 50 Ill. 138.

Mr. A. W. METCALF, for defendant in error; that the witness Miller was incompetent, cited Rev. Stat. 475; Boynton v. Phelps, 52 Ill. 210; Merrill v. Atkins, 59 Ill. 19; Richerson v. Sternburg, 65 Ill. 272; Donlevy v. Montgomery, 66 Ill. 227; Langley v. Dodsworth, 81 Ill. 86; Whitmer v. Rucker, 71 Ill. 410.

He could only be rendered a competent witness by the previous introduction of the agent of the deceased: Marshall v. Karl, 60 Ill. 208; Freeman v. Freeman, 62 Ill. 199; Stonecipher v. Hall, 64 Ill. 121; Jacquin v. Davidson, 49 Ill. 82.

Indefinite extension of time for payment will not release the surety: Flynn v. Mudd, 27 Ill. 323; Pearl v. Wellman, 11 Ill. 352; Woolford v. Dow, 34 Ill. 424.

Rejecting competent evidence is not error when the record shows that its admission would not have changed the result: Rowley v. Hughes, 40 Ill. 316; Ryan v. Brant, 42 Ill. 78; Thompson v. McLaughlin, 66 Ill. 407; Deniston v. Hoagland, 67 Ill. 265; Pratt v. Tucker, 67 Ill. 346.

Where substantial justice has been done a judgment will not be reversed: Elam v. Badger, 23 Ill. 498; Schwarz v. Schwarz, 26 Ill. 81; Hall v. Groufe, 52 Ill. 421.

Where it is apparent that a new trial will produce the same result the judgment should stand: McConnell v. Kibbe, 33 Ill. 176; Curtis v. Sage, 35 Ill. 22; Coursen v. Ely, 37 Ill. 338; Root v. Curtis, 38 Ill. 192; Potter v. Potter, 41 Ill. 80; Watson v. Wolverton, 41 Ill. 241; Clark v. Pageter, 45 Ill. 185; Pahlman v. King, 49 Ill. 266.

CASEY, J. The defendant in error as the administrator of the estate of Patience C. Morrison, deceased, instituted an action of assumpsit in the Madison Circuit Court, against the plaintiff in error and George A. Miller, for the recovery of a judgment on a promissory note, of which note the following is a true copy:

" $1,350. Two years after date, we or either of us, promise to pay Patience C. Morrison, or order, the sum of Thirteen hundred and Fifty dollars, for value received (money loaned), with interest from date at the rate of eight per cent. per annum, interest payable annually.

(Signed)      GEORGE A. MILLER,<br>WILLIAM T. COMBS."

July 13th, 1865.

The plaintiff in error filed his bill in equity against the said defendant in error and the said George A. Miller, seeking to enjoin and restrain the defendant in error from any further prosecuting said action of assumpsit against him. The allegations in the bill, in brief, are that the said George A. Miller borrowed from the said Patience C. Morrison, through her agent A. M. Brown, the said sum of thirteen hundred and fifty dollars; that the said Brown was acting as the agent of Patience C. Morrison in the entire transaction, and remained her agent until her death; that plaintiff in error, was the surety of Mil-

ler, and had no interest whatever in the sum borrowed by Miller, and did not receive any part of it, and that Brown, the agent, well knew that plaintiff in error was security for Miller, and had signed the note for Miller's accommodation only; that Miller paid the interest due on said note at eight per cent. annually to Brown, to the 13th day of July, 1870; that on the last named day the agent Brown promised and agreed with Miller (the note long since being due) that he would extend the time for payment for one year from that date, if Miller would pay ten per cent. interest per annum on the said note; that Miller assented to the proposition, and the following indorsement was written on the said note by the said Brown, and signed by the said Miller: "It is agreed by the parties to this note, that the interest shall be at the rate of ten per cent. until paid.

(Signed)    GEORGE A. MILLER."

Collinsville, July 13th, 1870.

And that by said agreement the time of the payment of said note was extended to the 13th day of July, 1871; that this agreement and extension was made without the consent or knowledge of plaintiff in error, and that after that time the said Miller annually paid the interest on said note to the said Brown, at the rate of ten per cent. to the year 1876; that on the 13th of July, 1870 and 1871, the said Miller was solvent; that the plaintiff in error early in the year 1871, verbally requested the said Patience C. Morrison to bring suit on said note, and that she promised to do so; that the said Miller is now insolvent. That in the year 1876 the said Patience C. Morrison died; that Bradshaw became her administrator, and has brought suit on said note against Miller and plaintiff in error. The bill prays for a preliminary injunction, and that upon final hearing the said Bradshaw as administrator, may be perpetually enjoined from any further prosecuting the said suit for the collection of said note. Answer under oath is waived. The answer of defendant in error admits the making of the note, and denies all other material allegations except as to the death of his intestate. The depositions of plaintiff in error, and the said George A. Miller, were taken in support of the bill. Exceptions were filed to the depositions for the following reasons. 1st, They are

not competent witnesses, for the reason that the suit was brought by Combs, an alleged surety, on a joint and several note signed by them to Patience C. Morrison, deceased, and sued on by defendant as her administrator. 2nd, Because the questions are leading and improper. 3d, Because the evidence of Miller shows that Brown wrote and he signed an agreement in writing on said note as follows: "It is agreed by the parties to this note that the interest shall be at the rate of 10 per cent. until paid. (Signed) GEORGE A. MILLER."

"Collinsville, July 13th, 1870."

The Circuit Court sustained the exceptions and suppressed the depositions, and there being no other testimony in support of the bill, the injunction was dissolved and the bill dismissed. Miller in his testimony says, in substance, that he borrowed the money from Brown, as the agent of Patience C. Morrison. That he always paid the interest to Brown except once, when he paid it to his wife. That he paid the interest to Brown annually, at the rate of eight per cent. per annum, to the 13th day of July, 1870. That at that time Brown insisted the money was worth ten per cent., and witness agreed if Brown would extend the time of payment for one year he would pay ten per cent. interest after that time. That Brown wrote the indorsement on the note and witness signed it. That he did not inform the plaintiff in error of the agreement, and he knew nothing of it, so far as witness knew. That he paid the interest at the rate of ten per cent. to the 13th July, 1876, and that Patience C. Morrison died in December, 1876. The plaintiff in error states that Miller became insolvent in the spring of 1878.

It is insisted, *First*— that they are not competent witnesses, for the reason that the suit was brought by Combs, an alleged surety in a joint and several note signed by them, to Patience C. Morrison, and sued on by defendant as her administrator. And this question involves in part a consideration of chapter 51, Revised Statutes of 1874, entitled Evidence and Depositions. The first eight sections of that chapter are, without being materially changed, taken from the act of the General Assembly of 1867, entitled " An act in relation to the com-

petency of witnesses." Prior to the enactment of that law, the rules and principles of the common law in regard to the competency of witnesses prevailed in this State. Before that time all persons, whether parties to the record or not, who had an interest in the subject-matter in litigation or in the result of the proceeding, were disqualified as witnesses as long as that interest existed. The first section of the act is an entire and complete departure from the long established rule as to the competency of witnesses, and is a general removal of all disabilities except as thereinafter stated. The second section is a limitation on the first section, and provides in substance that no party to the action, or person interested by virtue of the first section, shall be allowed to testify when the ad, erse party sues or defends as the trustee or conservator of any idiot, etc., or as the administrator or executor of any deceased person, unless when called as a witness by such adverse party so suing or defending, and except in a number of other cases. It will be seen that section two has reference entirely to section one. It has no reference whatever to the rules in regard to the competency of witnesses existing then and prior to that time.

The Legislature seem to have concluded that the rule as laid down in section one was too general and broad, therefore they enacted section two, limiting its operation and effect to section one, and perhaps supposing that section two destroyed substantially the effect of section one, they enacted the exceptions to section two. The first section, as already stated, announced the change. The second section limits the operation of the rule declared in the first. The various sections, when considered and construed together, are not to be regarded as an abridgement of the common law rules of evidence, but rather as an enlargement. It is certainly safe to assume that the General Assembly did not intend to change the common law rule as to the competency of witnesses in suits involving the administration of estates of deceased persons, idiots, lunatics &c· It would be more in accordance with the (it may be reckless) spirit of "this day and generation," to assume that the Legislature intended to abolish long established rules and usages, and relax the strict rules of the common law.

The next question is, was Miller a competent witness at and by the strict rules of the common law? The case of Kimball et al. v. Cook, reported in 1st Gilm. 433, is the earliest case we have been able to find on this subject in this State, and in that case it is held that, "By the rules of the courts of law, no party to the record can be a witness without the consent of the other parties, while in courts of chancery it is no objection that he is a party to the record, but the only inquiry is, whether he is called to support his own interest." Greenleaf states the doctrine to be, that in some cases at law and generally in the course of proceedings in equity, the party may appeal to the conscience of the other, by calling upon him to answer interrogatories. In the case of Miller v. McCown, 7 Paige, Ch. 753, it is substantially stated, that the principal maker on the note stood perfectly indifferent between the parties. He was liable in any event to pay the judgment and the costs, which might be recovered in a suit on the note. It was not material to the holder of the note, whether the principal maker was a party defendant or not, and whether he was or was not made a defendant to the bill, the right of the surety to examine him as a witness would be the same. In such a case if the principal is made a defendant in a court of equity he is not interested in favor of the complainant, or if he is interested at all, his interests are equally balanced. The fact that he is a party to the reccord is no objection to his being examined as a witness against his co-defendant. The extent of the decree in the case under consideration, in case it should be granted in accordance with the prayer of the bill, would be to perpetually enjoin the collection of the amount due on the note from the plaintiff in error. It would not in any way whatever prejudice the claim of the holder of the note against the principal, or his right to continue the suit at law and enforce the collection of the judgment which may be obtained. In this case it is averred and proved that the principal in the note failed and became insolvent some seven or eight years after the agreement as to the extension of the time of payment, and more than ten years after the maturity of the note. This would seem to make a strong case in equity in favor of the plaintiff in error. Having no information as to

the said agreement to extend the time of payment, and not hearing from the note in all that time, he may well have supposed that it had long since been paid and discharged.

The cases of Allison v. Allison, Dana, 91; Kensingham v. Bedford, 15 B. Mon. 325; and Fulton Bank v. N.Y. and S. Canal Co. 4 Paige, 127, fully sustain the foregoing views. The case of Kenedy et al. executors, etc. v. Evans, 31 Ill. 269, is very like the case under consideration. Evans filed his bill in equity, to restrain the collection of a judgment that had been entered against himself and Waughop. The bill showed that Waughop borrowed $1000 from defendant's testator. That Evans became surety on the note, Waughop being principal; that at the time of signing the note, both of them also signed a letter of attorney authorizing the confession of a judgment in case the note was not paid at maturity. The bill further showed an agreement between the holder of the note and Waughop, made after the note was due, by which the time of payment was extended, and Waughop in consideration therefor paid a greater rate of interest in advance. It will be seen that in principle, and also in fact, the two cases are almost alike. In considering the bill in equity, the question arose, was Waughop, the principal in the note (as Miller is the principal in the case under consideration), a competent witness to prove the agreement as to the extension of the time of payment, and as in the case before us, the the payee of the note was dead. The court said this is a contest between other parties, in no wise affecting his (Waughop's) interest. If complainant is relieved from the payment of the judgment, still Waughop would remain liable for its payment to the plaintiffs in the judgment, and if the bill is dismissed his liability is the same, neither increased or diminished; his interest is equally balanced, and he was a competent witness for any purpose. Just so it was with Miller; his liability could not be increased or diminished by the result of the suit; and in our view of the case, he is a competent witness. The next point made is that the testimony of Miller shows a different contract from the one in writing, made at the same time, and is therefore inadmissable. The general rule undoubtedly is that parol evidence of contemporaneous matters is not admis-

sable to contradict or vary the terms of a written contract, and our supreme court has held that a latent ambiguity may be explained by parol evidence, while a patent ambiguity cannot be so explained.

The indorsement on the note by which Miller agreed to pay ten per cent. interest instead of eight per cent. interest as provided on the face of the note, does not show any consideration for the agreement to pay the additional interest. Would showing the consideration for the promise vary the terms of the contract, is one view to be taken of the case; or was the agreement to extend the time for bringing suit on said note, one year, collateral to the written agreement; or generally would showing the agreement to wait one year, by parol testimony vary the terms of the indorsement on the note?

The case of Doulin v. Daigling et al. 80 Ill. 608, is not dissimilar to the one before us. The contract was in writing, and was to do the mason work on a court house, and it provides that "the work is to be done on the building just as it was before it was burnt." It was held that parol testimony was admissible to show the extent of the work as contemplated by the parties at the time the written contract was made, and that such testimony did not vary the written contract. The court house had been burned down; a part of the walls were standing, and the question arose as to how much of the walls then standing should be taken down. So in the case before us, would it not be competent to show the extent of the time suit was delayed on the note because of the payment of the additional interest? For the new agreement there must be some consideration, else the agreement itself is invalid. To say that Miller agreed to pay ten per cent. until the note was paid, is not expressing and does not show any consideration. It simply shows what Miller agreed to do. The agreement was treated as valid and binding, and under it Miller paid the interest annually at ten per cent. for six years, and the court will regard it as a valid agreement, if it can be done. The consideration of the agreement may be shown by parol evidence. Morgan et al. v. Falenstein et al. 27 Ill. 31. In Morris v. Tillson, 81 Ill. 607, it is held that parol evidence is admissible to show that a part of the con-

sideration of a lease was for rent past due, and that it did not affect or impair the lease in any way, or vary or change its legal effect; and I am unable to see how it is that the consideration of a promissory note may be shown by parol testimony, or even that of a deed, and not vary the terms of the contract, and in a case like the one before us, a naked agreement, not showing value received, the consideration upon which it rests may not be shown by parol testimony, without changing the terms of the contract.

In Patton v. Hopkins, 25 Wend. 419, it is said the instrument on its face does not purport to be a complete agreement between the parties, and there can be no objection to suppletory evidence. No consideration being shown the instrument itself is incomplete. It is well established law that a promise is a good consideration for a promise. That when a consideration is not expressed on the face of the writing, it may be shown by parol testimony, or when the contract is of an executory character and expresses no consideration on its face, parol testimony is admissible to show what the consideration was. Parsons on Contracts, Vol. 1, 430; Phillip's Evidence, Vol. 2, 670; Iredill v. Harris, 20 Pick. 12.

In Henson v. Henderson, 1 Foster, 224, it is in substance said that the proof showed a written bill of sale in which the horses were described, the ages stated and a receipt for the purchase money. It was held that a warranty made at the same time that the written instrument was prepared and signed, might be shown by parol testimony. Although the parties may have a written contract, yet it may also be shown that at the time they made a verbal agreement touching the subject matter, if it does not contradict or vary the terms of the written contract.

In Allen v. Peak, 4 M. & W. 40, Lord Abinger said if there had been a parol agreement which was afterward reduced to writing, the writing alone must be looked to to ascertain the terms of the contract, but that does not apply here. There was no evidence that the entire agreement was reduced to writing. In the case of Morgan v. Griffith (L. R. 6 Exch. 76), the plaintiff had consented to take a lease upon certain

Combs v. Bradshaw.

lands. Upon an examination of the premises he discovered that they were overrun with rabbits. He refused to sign the lease unless the rabbits were destroyed. The landlord refused to put such a provision in the lease, but promised that the rabbits should be destroyed, whereupon the plaintiff signed the lease. The landlord failed to comply with his agreement. The plaintiff brought suit against him, and it was held that parol evidence was admissible to show the agreement, although it was made at the time and prior to signing the lease. In Angel v. Duke, L. R. Queen's Bench, Cockburn, C. J. said: "We must see what the true history of the transaction is, and of course the sequence of events; the parties are negotiating about a lease; the plaintiff is not satisfied with the condition of the house, and the defendant verbally agrees to put the house in repair and more furniture in it; then the lease is signed. Upon a failure by defendant to comply, plaintiff brings this action, and the court holds that parol testimony is admissible to prove the verbal agreement made contemporaneously with the written contract."

The case of Erskine v. Adrian (L. R. 8) is very similar. In Johnson et al v. Oppenheim et al, 55 N. Y., it is said that parol collateral agreements made contemporaneously with a written agreement, but not inconsistent with it, or affecting its terms, may be given in evidence. The case of Chapin v. Dobson, Court of Appeals of N. Y., published in the *Weekly Jurist* of July 15th, 1880, is very like the one under consideration on this point. The action was brought on a written contract, by which plaintiff agreed to manufacture for defendant certain machines. The written contract related to machines thereafter to be manufactured, fixed the price, the number, place of delivery and the payments. On the trial the defendant offered to prove that, before he signed the contract the plaintiff agreed that the machines should do defendant's work satisfactorily or they should not be paid for. Held, no error; that as the parol contract was collateral to the one in writing, and did not contravene its terms, and was not inconsistent with it, and both related to the same subject-matter, the evidence offered was properly received. A collateral parol

agreement, made prior to or contemporaneous with a written agreement, but not inconsistent with, or affecting its terms may be given in evidence. The general rule requiring the rejection of parol evidence, when offered to vary a written contract does not apply, when the original contract was verbal and entire, and a part only reduced to writing. 1 Greenleaf, 284 a. So in the case under consideration. The verbal contract was complete. Brown was to delay the bringing of suit for one year, and therefor Miller was to pay from thenceforward interest at the rate of ten per cent. per annum. The case of Ruff et al. v. Jarrett, decided by the Supreme Court of this State, and reported in the Weekly Jurist of March 25, 1880, is very like the case under consideration. In that case the court says: " When a bill of sale of a lot of ice does not show to whom the sale was made, the quantity sold, nor the price per ton, but simply that the ice was sold by the vendor, describing its location, and stating that it was to be removed between its date and the first of April following, it will not constitute a contract between the parties without the aid of extrinsic evidence, and parol evidence is admissible to show that the sale was made with a warranty, on a plea of failure of consideration to an action on a note given for the price of the ice." We are satisfied after a very careful examination of the authorities that Miller was a competent witness, and that parol evidence was admissible to show the consideration for the agreement on the part of Miller to pay ten per cent. interest on the note, when on its face it drew but eight per cent. interest. And that showing that consideration to be an agreement to extend the time of payment of the note for the period of one year was not in violation of any rule of evidence. The testimony of Combs refers only to the insolvency of Miller, which occurred subsequently to death of the holder of the note, so that we see no objections to his testimony. For these reasons, we hold that the judgment of the circuit court in suppressing the depositions of Miller and Combs was erroneous and must be reversed, and the cause remanded.

Reversed and remanded.