CHARLES H. GETMAN, ASSIGNEE, ETC., RESPONDENT, v. THE SECOND NATIONAL BANK OF OSWEGO, APPELLANT.

*Bank — when it is chargeable with knowledge of facts which are known to its president.*

In an action, brought by an assignee in bankruptcy against a bank to recover a payment made to it, as having been made with intent to give a preference, and received by the bank with knowledge of the debtor's insolvency, the bank is chargeable with knowledge of all facts in regard to the debtor's intention and solvency which its president has acquired while acting in the capacity of president in its behalf.

What evidence is sufficient to establish such knowledge on the part of the president, considered.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought by the plaintiff, as the assignee in bankruptcy of one George Ames, to recover a payment made by said Ames to the defendant on March 31, 1877, on the ground that it was made in violation of the bankrupt act. (Sec. 5128 of the U. S. Rev. Stat.)

*George W. Parkhurst*, for the respondent.

*William F. Cogswell*, for the appellant.

RUMSEY, J.:

The referee was the proper person to pass upon the credibility of the witnesses, which became necessary by reason of their conflicting statements, and unless there is something in the papers to indicate

he has made a mistake in doing it the court should not interfere with his conclusions. In the conclusion which he reached as to the credit to be given to the several witnesses, he has evidently taken into consideration those facts in the case about which there is little or no dispute and which tend to corroborate the witnesses on the part of the plaintiff. Certain results followed the transactions detailed in the progress of the trial, and it was proper the referee should give credit to those witnesses who gave evidence of circumstances leading to those results, rather than to those who testify to facts at variance with them, or if not actually in conflict with them which do not tend naturally to produce them. We can perceive no error in his holdings in this regard. Leonard Ames was the defendant's president, and one part of his duty was to direct what paper should be discounted by defendant, and it is but natural to infer that he had a general knowledge of the affairs of defendant and an acquaintance (general, at least) with the pecuniary affairs of those doing business with it. George Ames, the alleged bankrupt, was his relative residing at the same place and the evidence discloses the fact that he was familliar with his pecuniary affairs, for as early as November, 1876, when George proposed to make to him a statement of his affairs he declined to hear it, saying to him "he knew how he was situated." In December, 1876, when applied to by Tanner to surrender to him certain collaterals held by the defendant, as security for notes George Ames was to pay, he refused alleging that George was hard up and he had to extend the time of the notes. Tanner swears that about 26th March, 1877, Leonard Ames said he was satisfied George would have to go under and that he would have to take care of defendant before helping to take care of Tanner. A note of George Ames for $1,000 fell due that day, which was held at defendant's bank, and Leonard said to George and Tanner that he would see Monen or send Monen up to see him, and then Leonard and George went into the bank together. It is true Leonard Ames denies that he made these declarations, but it is a significant fact that Monen did go up that day or soon after, and the result was that George Ames sold out to Monen a large quantity of lumber, much of which had been purchased on credit, and received for it near $3,000, which Monen borrowed of defendant upon Leonard Ames' indorsement, for which Leonard was secured

by a chattel mortgage upon the same lumber purchased by George Ames. This same money went directly to the defendant, and was by the check of George Ames applied to the payment not only of that portion of defendant's debt against George Ames, which was over due, but the payment of another debt owing to defendant, which did not become due for four days thereafter. It was a singular and suspicious circumstance, in view of the other facts disclosed by the evidence, that George Ames, who was largely in debt to divers persons, many of which debts were overdue and creditors pressing for payment, should by any arrangement between himself, Leonard Ames and Monen be divested of his title to the large quantity of lumber sold to Monen, and the debts due to defendant and Monen be fully paid in the operation, while his other creditors were left unprovided for. Defendant's teller Chamberlain, who received the money, knew that George Ames' note for $870, belonging to the defendant at the time of this payment, had laid in the bank overdue for over fourteen days (which was probably an act of bankruptcy on the part of George Ames), for he computed the interest and received the pay for it, and it is a fair inference from the testimony that both he and Leonard Ames knew of the facts which appeared on the trial that other notes of George had been presented at the bank for discount, which was refused, and still others which were payable there had been protested for nonpay-ment. There were various other facts proved on the trial in addition to those above mentioned, indicating that both Leonard Ames, defendant's president, and Chamberlain, its teller, were familiar with the pecuniary condition of George Ames, and had not only reasonable cause to believe he was insolvent, but to know he was actually so.

The exceptions to the testimony of the two witnesses Waters and Lovelace were not well taken. The statute of the United States (§ 5128 as amended), provides that if any person being insolvent or in contemplation of insolvency shall within two months of filing the petition in bankruptcy by or against him, with a view to give a preference pay to any creditor, having reasonable cause to believe such person is insolvent, etc., such payment shall be void and the assignee may recover it back, etc. Under this provision it is necessary to prove that the person making the payment was either

insolvent or contemplated becoming so, as well as to prove that the person receiving the payment had reasonable cause to believe the payer was insolvent, etc., and any evidence which tended to establish either of the first propositions was competent in the case. One of them was a prerequisite to plaintiff's recovery in the action, and either might very properly be established by evidence of facts with which defendant was not connected, and of which at the time they occurred it had no knowledge. If the proofs thus offered legally tended to establish either of the propositions it was admissible, and imposed upon the referee the burden of determining whether, in connection with the other evidence in the case, there was sufficient for that purpose. It was equally necessary to show that defendant had reasonable cause to believe such insolvency existed, but it does not follow that this must be done by the same evidence which establishes the insolvency of George Ames, for that fact may be proved by an entirely different kind of testimony. Waters and Lovelace were the employes of George Ames, one as his book-keeper, and the other as foreman in his shop, and as they state, familiar with his business operations, and while thus engaged had frequent conversations with him about such of it as occupied their attention. The evidence of each tended to show that George Ames was knowingly and recklessly prosecuting a losing business from which he contemplated insolvency would result, and that he coolly speculated upon the probabilities whether he would be able to continue the business through the month of March, 1877, or not; and from the testimony of Waters he evidently contemplated a dishonest insolvency. The declarations of George Ames made to these men gave character to the kind of business he was transacting, and showed that he contemplated the insolvency which followed as a probable result of his actions. The evidence of these witnesses, which was excepted to as being mere opinions and not statement of facts, was not properly subject to that imputation. They were familiar with all the business; one entered all transactions and orders on the books, and the other had all the orders submitted to him; knew the value of the materials used and the prices obtained for the manufactured articles, and were quite as competent as Ames himself to say whether the business was profitable or not, and they stated as a fact from their knowledge, and not as an opinion, that

the business was not profitable. A cross-examination as to their means of knowing the fact to which they swore, would in this, as it does in all other cases, show the weight which should be given to their statements. There seems to be no reason why this evidence was not entirely competent for the purpose of establishing the fact for which it was offered — the insolvency of George Ames — but whether it was so competent or not is not very material, for without this evidence the insolvency of George Ames on the 31st day of March, 1877, is so well established by a flood of other testimony that no doubt can rest upon this branch of the case.

It is a presumption of law as well as a dictate of common sense, that parties intend to bring about the natural results to which their actions tend, and George Ames did in fact pay to the defendant a large sum of money to discharge its claim against him. A portion of this debt was due and ought then to have been paid. Another and the larger portion was not due at the time, and there was no good reason for then paying it, for he was in fact insolvent, he owed other debts to a large amount which were past due and ought then to have been paid in preference to the defendant's debt not due, and the direct consequence of this action was to give the defendant a preference over the other creditors of the Ames. Leonard Ames, the president, and Chamberlain, the teller of defendant, knew of the pecuniary condition of George Ames, and Leonard Ames, if not both him and Chamberlain, aided George Ames to convert his lumber into money, which passed directly to the defendant and was by it applied to the payment of its debts due and to grow due; and the direct effect of this action was to give to defendant a preference for the full amount of all its debt over all the other creditors of this insolvent debtor. All these parties intended the defendant should have this preference; the law stamps it as a fraud upon the other creditors of George Ames, and if the defendant at the time it received the preferential payment, had reasonable cause to believe George Ames was insolvent, the payment was void and the plaintiff is entitled to recover.

The defendant being an artificial body, created by a power which could not endow it with reason, can neither act or know anything except through its officers and agents. While the defendant is chargeable with the full effect of an act done by its officers acting

within the limits of the power conferred upon them, and of any knowledge acquired by them while thus acting, its rights are abundantly protected by not holding it responsible for any knowledge its officers may have which was not thus acquired. If the defendant's president, or one of its directors, while engaged in his private business or otherwise, incidentally learns a fact when there is nothing concerning the affairs of the defendant apparently connected with such fact, such knowledge is not to be imputed to defendant. (*Fulton Bank* v. *N. Y. and Sharon Canal Co.*, 4 Paige, 127; *National Bank* v. *Norton*, 1 Hill, 572–579; *Bank of the United States* v. *Davis*, 2 id., 451–463; *The President, etc.*, v. *Cornen*, 37 N. Y., 320; *The Atlantic State Bank* v. *Savary*, in Ct. App., 11 Weekly Digest, 58.) Each of these cases, and the one in 1 Hill, 572, more fully than the others, recognize the rule that if such officer learn such fact while he is engaged in the business and for the interests of the principal such knowledge concludes the principal. Leonard Ames knew of the insolvency of George Ames, and he knew it in connection with his action as president of, and while acting for defendant when he refused to surrender to Tanner the collaterals which the bank held, when he subsequently recognized his duty to take care of the bank as paramount to caring for the interests of Tanner, and when he aided in the device by which George Ames' property was converted into money and applied to the payment of the defendant's debts. Chamberlain also probably knew the same fact when he accepted George Ames' check for the amount of defendant's debt, but whether he did or not is unimportant, for the legitimate knowledge of its president of the fact is sufficient to charge defendant and render void the payment to the teller. The position of defendant's counsel, that one of its executive officers may have proper notice of a fact which should control its action and by concealing it allow its other officers to act adverse to the interests of the party for whose benefit the notice enures and that such adverse action is legal, is not sound. A notice served upon the officer of a bank, that a piece of commercial paper was invalid for any cause, would be effectual to prevent such bank from becoming thereafter the *bona fide* holder of such paper through a purchase by any of its officers. It was the duty of the officer receiving such notice to advise all other employes of such fact, and

the bank would be none the less concluded by it if he failed to do so. (*Ingalls* v. *Morgan*, 10 N. Y., 178; *Weisser* v. *Denison*, id., 68.) And this rule applies to corporations as well as to individuals. (*Fulton Bank* v. *N. Y. and Sharon Canal Co.*, 4 Paige, 127; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30.) Any such rule as contended for by defendant's counsel would open the door to all sorts of fraud and be disastrous to business interests.

The defendant insists it had the legal right to set off the amount of its overdue note of $870 against any amount of money George Ames had on deposit with it, and that as to that amount the judgment is improper. The difficulty with this position is that the findings of fact made by the referee involve the proposition that the whole transaction by which the money, thus deposited, was raised by the sale of the lumber to Monen, and its application to the payment of the whole of the defendant's debt by the voluntary act of the parties, was a fraudulent device to evade the effect of the bankrupt law, and it cannot now be severed so as to leave a portion of it honest, and another portion dishonest. The entire matter was but one transaction and the imputed fraud attaches to every part of it.

The judgment must be affirmed with costs.

TALCOTT, P. J., and HARDIN, J., concurred.

Judgment affirmed with costs.